No. 48,212

STATE OF KANSAS, *ex rel.* CURT T. SCHNEIDER, Attorney General, *Appellant*, v. ROBERT F. BENNETT, Governor of the State of Kansas, *et al., Appellees.*

(547 P. 2d 786)

Opinion filed March 6, 1976.

*John R. Martin,* first assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellant.

*Charles N. Henson,* of Eidson, Lewis, Porter and Haynes, of Topeka, argued the cause, and was on the brief for the appellees.

*Robert A. Coldsnow,* Kansas Legislative Counsel, was on the brief *amicus curiae,* for the Kansas Senate, Kansas House of Representatives, and Kansas Legislative Coordinating Council.

The opinion of the court was delivered by

PRAGER, J.: This is an action in quo warranto brought by the state of Kansas on the relation of the attorney general as plaintiff seeking to oust members of the state finance council from the exercise of various powers and responsibilities placed in them by statute. Judgment was entered by the district court in favor of the defendants-appellees denying the relief sought by the plaintiff. Because of a change in the personnel of the state finance council an order has been entered by this court substituting new parties defendant for certain original parties. Sen. Ross O. Doyen, president of the Kansas senate, has been substituted for Richard D. Rogers who no longer holds that position. Sen. Wint Winter has been substituted for Sen. Ross O. Doyen, who was formerly chairman of the senate ways and means committee. Rep. John F. Hayes, as majority floor leader of the Kansas house of representatives, has been substituted for Donn J. Everett, who formerly held that position. Rep. John Carlin, as minority floor leader of the house of representatives, has been substituted for Richard C. "Pete" Loux. The remaining original defendants are Robert F. Bennett, governor of Kansas; Rep. Duane S. "Pete" McGill, speaker of the Kansas house of representatives; Sen. Joseph C. Harder, majority floor leader of the Kansas senate; Sen. Jack Steineger, minority floor leader of the Kansas senate; and Rep. Wendell Lady, chairman of the house of representatives ways and means committee. All legislator defendants are members of the state finance council by virtue of their legislative positions.

The questions presented in this case are entirely questions of law. The case must be determined on the basis of statutes creating the state finance council and prescribing the duties and powers thereof. It is the position of the attorney general that the exercise of certain statutory duties and powers of the state finance council by the legislative members of that body violates the constitutional doctrine of the separation of powers and that the exercise of certain other statutory duties constitutes an unlawful delegation of legislative powers.

Cases involving alleged violations of the separation of powers doctrine have been before this court on many occasions. The separation of powers doctrine was most recently discussed in *Leek v. Theis*, 217 Kan. 784, 539 P. 2d 304. *Leek* involved the question of whether K. S. A. 22-3707, providing for senatorial approval or rejection of gubernatorial appointments to the Kansas Adult Authority, is constitutional. Although *Leek* did not involve an attempt by the state legislature to have its own members serve on an administrative board, *Leek* is important because it discusses in some detail the separation of powers doctrine and some of the general principles pertaining thereto. Like the Constitution of the United States, the Constitution of Kansas contains no express provision requiring the separation of powers, but all decisions of this court have taken for granted the constitutional doctrine of separation of powers between the three departments of the state government—legislative, executive and judicial. The separation of powers doctrine was designed to avoid a dangerous concentration of power and to allow the respective powers to be assigned to the department most fitted to exercise them. (*Van Sickle v. Shanahan*, 212 Kan. 426, 446, 511 P. 2d 223.) In *Van Sickle* Mr. Chief Justice Fatzer set forth an excellent history on the separation of powers doctrine which does not need further elaboration here.

Throughout the judicial history of this state two basic approaches have been taken toward the doctrine. Some courts have applied the separation of powers doctrine strictly, refusing to tolerate the members of one department performing *any* duties traditionally assigned to a different department. A good example of this approach is that of Mr. Justice Smith in the majority opinion in *State v. Johnson*, 61 Kan. 803, 60 Pac. 1068, decided in 1900. There Mr. Justice Smith declares that the Constitution of Kansas has created three distinct and separate departments of government and that the functions of the three departments should be kept as distinct and

separate as possible, except so far as the action of one is made to constitute a restraint upon the action of the other to keep them within proper bounds and to prevent hasty and improvident action. At times the strict view has been applied without qualification to the point that if any department of government acts in any way beyond the bounds of its designated power such action is without jurisdiction, unconstitutional and void.

Although the theoretical separation of powers of government was strictly enforced in our early history without qualification, the more recent cases have modified the doctrine and applied a more practical approach. In *Leek* it is pointed out that despite the excellent theoretical framework which various cases have constructed, this court has held the separation of powers of government has never existed in pure form except in political theory. This view was taken in 1900 by Mr. Chief Justice Doster in his dissenting opinion in *State v. Johnson,* supra, where he states as follows:

".  .  . I wish to say that in the practical affairs of government there is not and cannot be any such thing as a clearly defined and complete separation of such powers. There is not and cannot be any such thing as a legislature which wills and ordains, and nothing else; a judiciary that interprets and decides, and nothing else, and an executive that enforces, and nothing else. The metaphysical distinction between the spheres of will, judgment and action cannot be applied in the domain of political science. In the practical affairs of government the distinction between legislator, judge and executioner is speculative and doctrinal, rather than actual, and the lines of demarcation between them vague and fanciful, rather than real. There are points at which the functions of the one assimilate so closely to the others as to be impossible of detection and separation. The most that can be done is to recognize the theoretical classification made and preserve in general outline the distinction drawn. 'Modern political science has, however, generally discarded this theory (the distribution of governmental powers), both because it is incapable of accurate statement, and because it seems impossible to apply it with beneficial results in the formation of any concrete political organization.'" (p. 837.)

In our judgment a strict application of the separation of powers doctrine is inappropriate today in a complex state government where administrative agencies exercise many types of power including legislative, executive, and judicial powers often blended together in the same administrative agency. The courts today have come to recognize that the political philosophers who developed the theory of separation of powers did not have any concept of the complexities of government as it exists today. Under our system of government the absolute independence of the departments and the complete separation of powers is impracticable. We must maintain in

our political system sufficient flexibility to experiment and to seek new methods of improving governmental efficiency. At the same time we must not lose sight of the ever-existing danger of unchecked power and the concentration of power in the hands of a single person or group which the separation of powers doctrine was designed to prevent.

The cases in this jurisdiction concerned with the separation of powers have involved various departments of our state government. *In re Sims, Petitioner,* 54 Kan. 1, 37 Pac. 135, involved an unconstitutional combination of executive and judicial power where a statute sought to confer on county attorneys the power to commit witnesses for contempt. *State v. Johnson,* supra, held invalid a combination of legislative, judicial, and executive functions in a court of visitation. *Sartin v. Snell,* 87 Kan. 485, 125 Pac. 47, held to be valid a statute providing for the appointment of county auditors by the district judges, a claimed improper delegation of executive power to the judicial branch. The issue presented in the case now before us involves a claimed unconstitutional delegation of executive powers to the legislative branch. It is necessary to consider the Kansas separation of powers cases involving the legislative and executive departments of government and the general principles of law which have been developed therefrom. We note in particular the following general principles:

(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. (*Leek v. Theis,* supra, ¶ 2.)

(2) The legislature may by statute provide for the appointment of members of boards or commissions created by the legislature. (*State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 273 P. 2d 198; *Marks v. Frantz,* 179 Kan. 638, 649, 298 P. 2d 316; *Leek v. Theis,* supra, ¶ 4.)

(3) There is no *express* provision of the Kansas Constitution which in terms prohibits the legislature from providing for the appointment of certain of its members to administrative boards or commissions or which prohibits their serving on such boards or commissions. (*State, ex rel., v. Kansas Turnpike Authority,* supra; *State, ex rel., v. Fadely,* 180 Kan. 652, 692, 308 P. 2d 537.)

(4) The separation of powers doctrine does not in all cases prevent individual members of the legislature from serving on administrative boards or commissions created by legislative enact-

ments. Individual members of the legislature may serve on administrative boards or commissions where such service falls in the realm of cooperation on the part of the legislature and there is no attempt to usurp functions of the executive department of the government. (*State, ex rel., v. Kansas Turnpike Authority*, supra; *State, ex rel., v. Fadely*, supra, concurring opinion of Mr. Justice Schroeder, at page 697.)

(5) The separation of powers doctrine prohibits individual members of the legislature from serving on administrative boards or commissions where such service results in the usurpation of powers of another department by the individual legislators. (*State, ex rel., v. Kansas Turnpike Authority*, supra; *State, ex rel., v. Fadely*, supra; *State, ex rel., v. State Office Building Commission*, 185 Kan. 563, 345 P. 2d 674; *Leek v. Theis*, supra.)

(6) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. (*Leek v. Theis*, supra, ¶ 10, at page 805; *State, ex rel., v. Fadely*, supra.)

The problem, of course, is to determine whether or not a usurpation of powers has taken place. That term has not heretofore been clearly defined. It has been suggested that to have a usurpation one department of the government must be subjected directly or indirectly to the coercive influence of the other. (*State, ex rel., v. Fadely*, supra, at page 696; *Leek v. Theis*, supra, at page 807.) It seems to us that to have a usurpation of powers there must be a significant interference by one department with the operations of another department. In determining whether or not an unconstitutional usurpation of powers exists, there are a number of factors properly to be considered. First is the essential nature of the power being exercised. Is the power exclusively executive or legislative or is it a blend of the two? A second factor is the degree of control by the legislative department in the exercise of the power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature? A fourth consideration could be the practical result of the blending of powers

as shown by actual experience over a period of time where such evidence is available. We do not wish to imply that these are the only factors which should be considered but it seems to us that they have special significance in determining whether a usurpation of powers has been demonstrated.

We turn now to the problem of determining whether there has been a usurpation by the legislative department of powers and functions of the executive department as a result of the creation of the state finance council and the exercise of its powers and duties. To determine this issue we must carefully examine exactly what the state finance council is and what it does.

The attention of this court was first directed to the finance council in 1957 in *Fadely*. The sole issue involved in that case was the constitutionality of G. S. 1955 Supp. 75-3711 (4) which authorized the state finance council to allocate to and authorize expenditures from the state emergency fund as provided for in G. S. 1955 Supp. 75-3712 and 75-3713. No other duties or functions of the state finance council were challenged or considered by the court. In the majority opinion Mr. Justice (now Chief Justice) Fatzer discussed the history of the preceding acts leading up to the creation of the finance council. It would be helpful to review briefly that history in this opinion. In 1943 the legislature established a state war emergency fund to be administered by a state war emergency fund board consisting of six members—the governor, lieutenant governor, state auditor, speaker of the house, and chairmen of the ways and means committee of the senate and of the house of representatives. (Ch. 207, L. 1943.) The statute was a product of the emergency created by World War II. Section 3 provided that *while the United States was engaged in hostilities with any foreign nation and no longer,* such board, by unanimous vote of all of its members, was authorized and empowered to make allocations to and authorize expenditures by various state agencies from the state war emergency fund for two purposes: (1) preservation of the public health and protection of persons and property from extraordinary conditions arising out of the war and which were not foreseen at the time appropriations were made by the regular session of 1943; (2) repair or temporarily replace buildings or equipment owned by the state and destroyed or damaged by sabotage, fire, wind, tornado or act of God if such building or equipment was absolutely necessary to the continued functions of the particular state agency using the same. The council could act only by unani-

mous vote of all of its members. Following the end of World War II the legislature in 1947 created in lieu of the state war emergency fund a state emergency fund. A state emergency fund board was created to make allocations to and authorize expenditures from the state emergency fund. What had originally been designed as a fund to take care of emergencies arising in war time had now become a permanent part of the Kansas governmental scheme.

At its 1953 regular session the legislature repealed all laws relating to the state emergency fund and the state emergency fund board and created the state department of administration consisting of a budget division, an accounts and reports division, a purchasing division, a personnel division, and the state finance council. (L. 1953, Ch. 375; G. S. 1955 Supp. 75-3701 to 75-3904.) Thus Kansas became one of the states which sought to effect administrative reorganization through a department of administration. This plan assumed that the governor would be able to control and coordinate the numerous state agencies by the judicious supervision, auditing, and inspection of a central department. By controlling budget estimates and by continuous management audits, preaudits of financial transactions, centralized purchasing, and the recruitment, supervision, and direction of civil service personnel, the governor through his appointed director of administration, would presumably be able to direct the whole operation of the executive department of the state government. The state finance council was created as a legislatively oriented council to approve the rules and regulations of the department of administration and thereby to check the power of the governor to coordinate the activities of state agencies.

The basic provisions of the 1953 act remain in effect today and may be found in K. S. A. 1975 Supp. 75-3701 through 75-3775. In 1957 when *Fadely* was decided the council consisted of six members—(1) the governor, who was designated as chairman, (2) the lieutenant governor, (3) the president pro tem of the senate, (4) the speaker of the house of representatives, (5) the chairman of the senate committee on ways and means, and (6) the chairman of the house committee on ways and means. The general powers and duties of the state finance council were provided for in G. S. 1955 Supp. 75-3711, which is quite similar to our present statute, K. S. A. 1975 Supp. 75-3711. Suffice it to say the finance council was granted broad powers to exercise control over the operations of the department of administration. In 1972 important changes were made in the department of administration. (L. 1972, Ch. 332.) The state

finance council was continued in existence and was declared "attached to the department of administration" (75-3708a). Its membership consisted of the same six members which it had under the 1953 act. Except in cases where other conditions and limitations were prescribed by statute, the chairman and four or more other members of the state finance council were declared to constitute a quorum and a majority vote of all members of the state finance council governed. (75-3711.) The two exceptions to the majority vote provision involved actions taken by the council with respect to the state emergency fund (75-3713) and actions authorizing the state board of treasury examiners to issue certificates of indebtedness (75-3725a), both of which required the unanimous vote of all members of the finance council. In 1974, K. S. A. 75-3708 was amended to enlarge the state finance council to its present nine members—the governor and the eight members who constitute the leadership of the Kansas legislature. Today the governor has one vote and the legislative members have eight votes.

In the petition filed in this case by the attorney general reference is made to numerous statutes involving the powers and duties of the state finance council. K. S. A. 1975 Supp. 75-3711 provides that, in general, but not by way of limitation, the state finance council shall:

(1) Hear and determine appeals by any state agency from final decisions or final actions of the secretary of administration or the director of computer services.

(2) Approve, modify and approve or reject proposed rules and regulations submitted by the secretary of administration.

(3) Make allocations to, and approve expenditures by a state agency, from any appropriations to the state finance council for that purpose, of funds for unanticipated and unbudgeted needs, under conditions and limitations prescribed by the legislature.

(4) Exercise powers and perform functions specified for the state finance council by the Kansas civil service act or by other laws.

A number of other statutes specifically vest the state finance council with additional powers and duties. The state finance council is vested by law with the authority to fix or approve the compensation to be paid to a large number of officers and employees of the executive department of government. The state finance council is required to fix the annual salaries of the adjutant general (48-203), the executive secretary of the state board of healing arts (65-2878), and the employees of the bicentennial commission (73-1504). The record refers to 71 state officers and employees whose annual salary

or compensation must be approved by the state finance council.

The state finance council exercises control and authority over the state department of administration as a whole. The council must approve any and all rules and regulations with respect to the manner of performance of *any* power or duty of the department and the execution of *any* business of the department and its relations to and business with other state agencies. (K. S. A. 1975 Supp. 75-3706.) The finance council may hear and determine appeals by any state agency from final decisions or final actions of the secretary of administration or the director of computer services. (K. S. A. 1975 Supp. 75-3711 [a] [1].) All regulations promulgated by the director of the division of accounts and reports pertaining to old-age and survivors insurance for public employees are made subject to approval of the state finance council (75-3749). The finance council must approve all rules and regulations adopted by the director of architectural services pertaining to uniform standards for mobile homes and recreational vehicles. (K. S. A. 1975 Supp. 75-1220 [e].) Under K. S. A. 1975 Supp. 75-4330 the state finance council must approve memorandum agreements resulting from labor negotiations involving state employees as a condition precedent to the effectiveness of such agreements.

The state finance council exercises extensive power and authority over the administration of the Kansas civil service act and the division of personnel. The council must approve all rules and regulations prepared by the director of the division of personnel for carrying out the provisions of the Kansas civil service act (75-3746). Assignment to classes of all positions in the classified exempt service of the Kansas civil service act and the assignment of classes to salary ranges are made a duty of the director of personnel but such assignments cannot become effective until approved by the council (75-2938). The director of personnel is required to prepare a pay plan which shall include a schedule of salary and wage ranges and steps, which must be approved by the finance council (75-2938 [3]). The finance council must approve regulations adopted by the secretary of administration relating to the hearing of appeals by the state civil service commission. The council must approve all regulations pertaining to the furnishing of housing, food, and other maintenance to state employees (75-2961a). It is clear that these statutes vest in the state finance council the power to control operations of the division of personnel.

The state finance council exercises extensive power and authority

over the functions and responsibilities of the division of the budget. K. S. A. 1975 Supp. 75-3714a establishes as a part of the department of administration, a division of the budget whose administrative head is the director of the budget. The secretary of administration is empowered to adopt an allocation system on the advice of the budget director when it appears that for any fiscal year the resources of the general fund or any special revenue fund are insufficient to cover appropriations for that year. Agencies affected by decisions of the secretary of administration regarding the allotment system may ask for a review of such decision by the state finance council whose decision controls (75-3722). In addition the finance council may grant authority to any state agency to transfer a part of any item appropriated to such agency to any other item of its appropriation. (K. S. A. 1975 Supp. 75-3726a.)

Other miscellaneous powers of the state finance council are worthy of mention. The secretary of corrections is directed to provide employment opportunities, work experiences, and educational or vocational training for all inmates capable of benefiting therefrom, and is authorized to grant each inmate as a reward for such employment an amount which shall be set by the state finance council but not less than 25 cents. (K. S. A. 1975 Supp. 75-5211.) The finance council exercises control over the director of architectural services in that in the event of disagreement between the director of architectural services and the administrative head of any state agency relating to plans, specifications, and contracts involving the construction or repair of public buildings, the secretary of administration is required to submit such dispute to the state finance council and its decision shall be final. (K. S. A. 75-3741; K. S. A. 1975 Supp. 75-1202b.) The finance council also has authority to establish limitations on the allowance of moving expenses made to new professional employees by any state agency. (K. S. A. 1975 Supp. 75-3219.)

As indicated above two functions of the state finance council require the unanimous approval of all nine members of the council. K. S. A. 1975 Supp. 75-3725a provides in substance that whenever it shall appear that the estimated resources for any fiscal year in the state general fund are sufficient to meet in full the estimated expenditures for that fiscal year, but the estimated resources in the state general fund in any month or months of such fiscal year are insufficient to meet in full the estimated expenditures for such month or months, the finance council may by unanimous vote order

the state board of treasury examiners to issue a written certificate of indebtedness subject to redemption from the state general fund within 60 days. K. S. A. 1975 Supp. 75-3713 authorizes the state finance council by unanimous vote of all its members to make allocations to and authorize expenditures by state agencies from the state emergency fund in the event of extraordinary emergency conditions specifically set forth in the statute. In addition by unanimous vote of all its members the finance council is authorized to make loans or grants of funds in the state emergency fund to political subdivisions where public buildings or equipment are damaged or destroyed. (K. S. A. 1975 Supp. 75-3713a.)

Finally the state finance council is given extensive power and authority over the transfer and expenditure of public moneys. Under various appropriation acts enacted in 1975 it is provided that upon "written application to the governor and approval by the state finance council expenditures from special revenue funds may exceed the amounts" specified in these acts. Cited as examples by the attorney general are Laws of 1975, Ch. 8, § 51; Ch. 9, § 10; Ch. 10, § 14; Ch. 13, § 10; Ch. 14, § 12; Ch. 15, § 49; Ch. 18, § 54; Ch. 20, § 9; Ch. 21, § 5; Ch. 22, § 5; Ch. 23, § 15; Ch. 24, § 11; Ch. 25, § 7; Ch. 26, § 27; and Ch. 27, § 14. Furthermore, in the appropriation of moneys to state agencies unencumbered balances are commonly reappropriated from the state general fund with the proviso that expenditures therefrom may not exceed specified amounts except upon approval of the finance council. (L. 1975, Ch. 9, § 5 [a].) Some appropriation acts also provide that the number of full-time and regular part-time positions which may be paid from appropriations for specific agencies are fixed by law subject to approval of the state finance council to exceed the specified limitations. See for example, Laws 1975, Ch. 10, § 13. The state board of regents is authorized with the approval of the state finance council to amend lists of restricted fees and service activities, receipts from which are appropriated by law. (Ch. 14, § 3 [b].) K. S. A. 1975 Supp. 75-3711a provides that any state agency *not otherwise specifically authorized by law* may, with the approval of the state finance council receive grants of money and funds appropriated under any federal act or from any other source. The statute provides that such a state agency may with the approval of the state finance council, contract with and receive, and/or spend or transfer moneys from other state or federal agencies. This statute has no

application to funds specifically authorized to be received and expended by any statute.

All of the powers and duties of the finance council which are set forth above are challenged in this action by the attorney general either as a usurpation of executive powers by the legislature or on the basis that they constitute a delegation of legislative powers to the state finance council without sufficient legislative standards or guidelines. It is obviously a difficult task to classify these powers as executive or legislative and to determine which powers may constitutionally be exercised by the state finance council and which may not. We have concluded that the statutory powers and duties granted to the state finance council to supervise the operations of the department of administration and its various divisions are purely an exercise of executive power. In particular we hold the following duties or powers to be essentially executive or administrative in nature:

(1) The power to fix or approve the compensation paid to state officers and employees;

(2) Certain powers under the civil service act, such as the adoption of rules and regulations for carrying out the act, approval of assignment of positions in the civil service to classes, and the assignment of classes to salary ranges, approval of the pay plan containing a schedule of salary and wage ranges and steps, approval of terms upon which state agencies may furnish housing, food service and other employee maintenance to state officers and employees in the civil service, and the determination of the cost and value of such benefits;

(3) The determination of appeals by state agencies from actions by the secretary of administration in the allotment of the general fund or special revenue funds when insufficient to cover appropriations from such funds;

(4) Determination of the amount, not less than 25 cents, to be credited by the secretary of corrections to inmates for employment;

(5) Resolution of disputes between the director of architectural services and the head of a state agency over construction of buildings, major repairs, or improvements authorized by the legislature for the state agency;

(6) Setting of limitations on payment of moving expenses of state employees;

(7) Approval of rules and regulations governing operations of the department of administration and each of its divisions;

(8) Determination of appeals by state agencies from decisions of the secretary of administration or director of computer services;

(9) Approval of rules and regulations to carry out the uniform standard code for mobile homes and recreational vehicles;

(10) Approval of the transfer by a state agency of a part of an appropriated item to any other item of its appropriation.

All of these powers concern the day-to-day operations of the department of administration and its various divisions. The vesting of such powers in the state finance council in our judgment clearly grants to a legislatively oriented body control over the operation of an executive agency and constitutes a usurpation of executive power by the legislative department. All of the powers and functions set forth above are controlled by a majority vote of the nine-member finance council, only one of whom, the governor, is a member of the executive department. It is true that only the governor, as chairman, has the authority to call meetings of the finance council and that the governor has the power to set the agenda for any meeting. The trouble is that the governor has no real choice except to call a meeting of the state finance council since the department of administration cannot really function unless its rules and regulations are approved and made effective and unless intradepartmental disputes can be finally determined. The legislature has by these statutes placed the state finance council, a body controlled by legislators, at the apex of the administrative structure of the state department of administration in a position where it exerts, both directly and indirectly, a coercive influence on that executive department. We, therefore, hold that all of the executive powers specifically set forth above may not constitutionally be performed by the state finance council with its present membership. Admittedly the legislature could have enacted statutes dealing with the subject matter delegated to the finance council. But it failed to do so. It chose to enact a law in general terms and conferred the power to execute it upon an administrative board in the executive department. Having done so the legislature could not constitutionally vest the power to execute the law in a body controlled by individual legislators. In so doing it violated the doctrine of the separation of powers.

The powers exercised by the state finance council with respect to expenditures from the state emergency fund (K. S. A. 1975 Supp. 75-3713; 75-3713a) we uphold as a cooperative effort between the executive department and the legislative department of the

state. The powers granted there may be exercised only for the limited purposes specifically set forth in the statute. They are concerned with extraordinary conditions involving the public health or the protection of persons and property and were granted to insure prompt state action in the event of a major disaster. The powers of the finance council in relation to the state emergency fund were fully considered and upheld in *State v. Fadely,* supra. In view of the fact that such powers can be exercised only by the unanimous vote of the finance council we cannot say that the exercise of such powers by the council constitutes a usurpation of executive power.

We have also concluded that the power of the state finance council by unanimous vote to order the state board of treasury examiners to issue a certificate of indebtedness under the limitations specifically set forth in K. S. A. 1975 Supp. 75-3725a may constitutionally be exercised by the finance council. The legislature has established clear guidelines for the exercise of this power. Because the exercise of this power involves the creation of a debt of the state, we view this power as so closely related to the exercise of legislative power that in our judgment such power can be upheld under the circumstances. Since the action of the finance council must be unanimous, it cannot act without the approval of the governor. We, therefore, hold that the exercise of such power by the state finance council does not constitute a usurpation of executive power by the legislative department. We wish to emphasize that this power is upheld as not being in violation of the constitutional doctrine of separation of powers. We have not considered its validity with respect to any other constitutional provision.

There remains for our consideration the constitutionality of the powers and authority vested by statute in the state finance council over the transfer and expenditure of public moneys. As pointed out heretofore the legislature in 1975 enacted a number of appropriation acts which delegated to the finance council broad powers to authorize expenditures from special revenue funds which exceed the limits of expenditures authorized by statute. Under each of these acts appropriations are made to various executive agencies from the state general fund and expenditure limitations are specifically established for each agency. The appropriation act then contains a provision usually in the following language:

"Upon written application of the governor and approval of the state finance council, expenditures from special funds may exceed the amount specified in

this act where such excesses are the result of circumstances which could not reasonably have been foreseen when the legislature was in session."

We have concluded that the attorney general is correct in his position that such statutory enactments confer upon the state finance council the power to amend the provisions of appropriation acts and to authorize expenditures by the executive department in excess of limitations specifically fixed by the legislature with no adequate standards or guidelines to control the finance council in the exercise of its discretion.

We agree with all parties that the appropriation of money and the setting of limitations on expenditures by state executive agencies constitutes an exercise of legislative power. We further agree that the legislature may delegate to an administrative body some of the legislature's functions where the policy is fixed and standards are definitely established which determine the manner and circumstances of the exercise of such power. (*Board of Satanta v. Grant County Planning Board,* 195 Kan. 640, 408 P. 2d 655.) Great leeway should be allowed the legislature in setting forth guidelines or standards and the use of general rather than minute standards is permissible. We recently spoke to this question in *State, ex rel. v. State Board of Education,* 215 Kan. 551, 527 P. 2d 952 where we stated:

". . . Our cases clearly recognize that the legislature may delegate a legislative function when constitutional authority for the delegation is present and the statutory delegation is circumscribed by sufficient legislative guidelines to cover the nature and extent of the legislative function intended to be delegated. . . ." (p. 554.)

Under the statutes now before us the only standard or limitation on the power of the state finance council to approve expenditures from special revenue funds in excess of fixed statutory limits is "where such excesses are the result of circumstances which could not reasonably have been foreseen when the legislature was in session." In our judgment this vague standard is insufficient to satisfy the constitutional requirement that the legislature may not delegate legislative power unless adequate standards are established which determine the manner and exercise of such power. There are no standards which limit the finance council as to the amount or the subject matter of the expenditures which it may authorize. The power to approve such expenditures may well involve millions of dollars of state money. We note for example that the annual report of the Division of Accounts and Reports of the Department of Adminis-

tration for the fiscal year ending June 30, 1975, shows a total balance in the special revenue funds in excess of $114,000,000.

We have likewise concluded that there are no adequate legislative standards or guidelines to govern the finance council in the exercise of its authority to increase the fixed positions of employment authorized for state agencies, or to approve the receipt and expenditure of federal or other funds not authorized by specific statutes, or to authorize the state board of regents to amend or change its list of fees and service activities and to expend the moneys derived therefrom.

Under the powers granted by these appropriation acts the finance council is in practical effect set up as a little legislature with the power to appropriate and authorize the expenditures of state moneys. In our judgment this unrestricted grant of power to the state finance council constitutes a delegation of legislative power without adequate standards or guidelines. Such a delegation of legislative power is unconstitutional.

From what has been said it is evident that the plaintiff is entitled to judgment ousting the legislative members of the state finance council from the exercise of all of their powers and duties concerning the supervision of the operations of the department of administration and its various divisions which we have held constitute a usurpation of executive power by the legislative department in violation of the separation of powers doctrine. The validity of the actions of the state finance council since its creation in 1953 may be questioned. It is the judgment of the court that from the time of its creation in 1953 until the filing of this opinion the acts of the state finance council were those of *de facto* officers binding between all persons dealing with the finance council as a public body composed of public officers. (*State ex rel., v. State Office Building Commission,* 185 Kan. 563, 345 P. 2d 674.) It is further the judgment of this court that upon the filing of this opinion the duties of the state finance council involving the supervision of the department of administration and its various divisions shall devolve upon and be exercised by the governor as the head of the executive department of this state until such time as the legislature shall by statute adopt a new legislative plan or scheme.

We further hold that the state finance council as presently constituted may continue to exercise its powers and duties to authorize the issuance of certificates of indebtedness under the provisions of K. S. A. 1975 Supp. 75-3725a and to make allocations to and autho-

rize expenditures by state agencies from the state emergency fund as provided for in K. S. A. 1975 Supp. 75-3713 and 75-3713a.

Finally, we hold that upon the filing of this opinion the power and authority of the state finance council over the transfer and expenditures of public moneys which have been considered and declared to be invalid and unconstitutional in this opinion may no longer be exercised under existing statutes.

The judgment of the district court is reversed in part and affirmed in part in accordance with the views expressed in this opinion.