639 F.2d 628
 Doris E. PARCELL, Plaintiff-Appellant,
v.
GOVERNMENTAL ETHICS COMMISSION, State of Kansas, and Leonard
Thomas et al., Defendants-Appellees.
 No. 79-1475.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 31, 1980.
 
 James Yates, Kansas City, Kan., for plaintiff-appellant.
 Dennis D. Prater, Gen. Counsel Governmental Ethics Commission and Sp. Asst. Atty. Gen., Lawrence, Kan., for defendants-appellees.
 Before SETH, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 Inasmuch as the instant action presented primarily an issue arising out of the Kansas law we submitted an interrogatory to the Supreme Court of Kansas and now have received an opinion answering the question that was submitted to the Kansas Court. We accept the determination by the Kansas Supreme Court of the question of the question of the Kansas law. It is incorporated herein.
 
 
 2
 We reserved decision at the time of submission of the question to the Kansas court of the federal question issue. We stated at that time that we would proceed to determine it if the Kansas court upheld the Kansas statute. Inasmuch as the Kansas court has upheld the statute and has concluded that it satisfies the requirements of Kansas law, we must now proceed to consider the reserved federal question. Our conclusion is that the trial court clearly determined that issue also and accordingly the judgment of the district court should be affirmed.
 
 
 3
 The plaintiff contends on this that the definitions of "contributions" and "expenditures" are so vague and overlapping that the plaintiff cannot be compelled to file a disclosure report because of the criminal penalties which are involved.
 
 
 4
 The plaintiff maintains that the statute does not meet the test of being specific in its language so as to provide adequate notice to a person of ordinary intelligence. This contemplated conduct is illegal. The argument continues, no person is to be held criminally responsible for conduct which he could not reasonably understand to be proscribed. The case of United States v. Harriss, 347 U.S. 612 at 617, 74 S.Ct. 808 at 811, 98 L.Ed. 989 (1954) is properly relied on for the stated proposition.
 
 
 5
 However, we examine the statutes, keeping in mind the contention that is advanced.
 
 
 6
 The provision in question defines contribution:
 
 
 7
 § 4102(d)(1) "Contribution" means: (A) Any advance, conveyance, deposit, distribution, gift, loan or payment of money or any other thing of value made for the purpose of influencing the nomination or election of any individual to state office.
 
 
 8
 K.S.A.1975 Supp. 25-4102(d).
 
 The term "expenditure" is also defined:
 
 9
 (f)(1) "Expenditure" means: (1) Any purchase, payment, distribution, loan, advance, deposit or gift of money or any other thing of value made for the purpose of influencing the nomination or election of any individual to state office.
 
 
 10
 K.S.A.1975 Supp. 25-4102(f).
 
 
 11
 We call attention to the fact that the above two provisions are virtually identical except the one first cited has "conveyance" and the other states "purchase".
 
 
 12
 In the decision of the Supreme Court of the United States in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) the Supreme Court, in discussing almost identical contentions concerning the Federal Elections Campaign Act, was able to interpret the almost identical statutes in a way that did not require a holding of unconstitutionality. For that reason the Buckley decision is dispositive of the federal issue that is submitted.
 
 
 13
 It cannot be said that these two statutes are at variance one with another. They are identical in their terms except that the first one has used the term "conveyance" and the other has used the term "purchase". But other than that there is no genuine difference between the two provisions. The comparable federal statute which is found in 2 U.S.C. § 431 contains definitions amazingly similar to those which are in the Kansas statute.
 
 
 14
 The construction of the statute by the Supreme Court which led to its conclusion that the measure was constitutional can be summarized as follows:
 
 
 15
 (the Federal Statute) imposes independent reporting requirements on individuals and groups who are not candidates or political committees only in the following circumstances: (1) when they make contributions earmarked for political purposes or authorized or requested by a candidate or his agent, to some person other than a candidate or political committee, and (2) when they make expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate."
 
 
 16
 424 U.S. at 80, 96 S.Ct. at 664.
 
 
 17
 The appellant points to the fact that both definitions in the state statute contain the word "payment" whereas both the federal definitions do not contain this word. It does not appear that this was the determining factor in the Buckley decision. It does not rely on any such rationale; rather its basis is the general content and the clear and unambiguous government interest in preventing corruption in campaigns.
 
 
 18
 We must conclude that the Buckley decision, although not direct authority, nevertheless points the way in strong terms as to how this cause should be decided. Based upon the comparisons and the result of the Buckley case, our conclusion is that the Kansas statute does not violate the Constitution of the United States.
 
 
 19
 A somewhat similar argument has been made by appellant in considering the definition of "political committee". It is argued that this is void for vagueness. We have tested this argument by applying the trial court's consideration of it. The trial court did not consider this contention to be substantial and rejected it. We are persuaded to treat it in the same manner.
 
 
 20
 Our conclusion is that there is a general lack of merit in the appellant's argument directed to the federal constitution and our ruling is that the judgment of the district court should be and the same is hereby affirmed.
 
 No. 80-52375-S
 
 21
 DORIS E. PARCELL,
 
 
 22
 Appellant,
 
 
 23
 v.
 
 STATE OF KANSAS
 
 24
 and
 
 GOVERNMENTAL ETHICS COMMISSION
 
 25
 and
 
 
 26
 Leonard THOMAS, et al. (Other Members of the Commission),
 
 
 27
 Appellees.
 
 Syllabus by the Court
 
 28
 The Governmental Ethics Commission, the majority of which is appointed by legislators pursuant to K.S.A. 1979 Supp. 25-4119a, does not constitute a usurpation of executive power by the legislative branch of government and does not violate the doctrine of separation of powers.
 
 
 29
 On assignment of certified question of law from the United States Court of Appeals for the Tenth Circuit; WILLIAM E. DOYLE, judge. Opinion filed December 6, 1980. The question certified is determined.
 
 
 30
 James Yates, Kansas City, Kansas, argued the cause and was on the brief for appellant.
 
 
 31
 Dennis D. Prater, Gen. Counsel, Governmental Ethics Commission and Sp. Asst. Atty. Gen., Lawrence, argued the cause, and Robert T. Stephan, Atty. Gen., Topeka, Kan., was with him on the brief for appellees.
 
 McFARLAND, Judge:
 
 32
 This case involves determination of a question of law certified to this court by the United States Court of Appeals for the Tenth Circuit under the authority of the Uniform Certification of Questions of Law Act (K.S.A.1979 Supp. 60-3201 et seq.).
 
 CERTIFIED QUESTION OF LAW
 
 33
 Whether the Governmental Ethics Commission, the majority of which is appointed by legislators, constitutes a usurpation of executive power by the legislative branch of government and thereby violates the doctrine of separation of powers as the same is recognized as a part of the Kansas State Constitution?
 
 
 34
 Before determining the question some background information is needed. In the fall of 1978 a complaint was filed with the Governmental Ethics Commission alleging Doris E. Parcell had violated the Campaign Finance Act (K.S.A.1979 Supp. 25-4101 et seq.) by failing to prepare and file reports with the secretary of state relative to her expenditures in a Wyandotte County election to secure the defeat of Associate District Judge Francis J. Donnelly and to support Bill Robinson, Jr., as a write-in candidate. The Commission commenced its investigation of the complaint.
 
 
 35
 Ms. Parcell then filed a multifaceted action in the United States District Court for the District of Kansas, challenging the constitutionality of various provisions of the Campaign Finance Act, including the composition of the Governmental Ethics Commission.
 
 
 36
 The case was heard by the Honorable Earl E. O'Connor, who upheld each of the various challenged statutes and entered judgment for the defendants. The trial judge's opinion is reported in Parcell v. State of Kan., 468 F.Supp. 1274 (D.Kan.1979). Ms. Parcell appealed the decision to the United States Court of Appeals for the Tenth Circuit. The previously stated question, involving interpretation of Kansas law, has been certified to this court with resolution of the federal issues by the circuit court being held in abeyance until the certified question is determined.
 
 
 37
 The composition of the Governmental Ethics Commission is fixed by K.S.A.1979 Supp. 25-4119a. The action herein was commenced in February of 1979. The 1979 Kansas legislature amended the statute effective July 1, 1979. The federal district court decided the case in April, 1979. The 1979 amendments altered the statute in a number of respects which are primarily "housekeeping" in nature and none of the amendments affect the question of law certified herein. Under such circumstances only the present statute needs to be cited. Additionally, should defendants prevail on the appeal, the Commission, operating under the present statute, will proceed with its investigation. The present statute provides, in relevant part:
 
 K.S.A.1979 Supp. 25-4119a:
 
 38
 "(a ) ... The governmental ethics commission shall consist of eleven (11) members of whom five (5) shall be appointed by the governor, two (2) by the president of the senate, two (2) by the speaker of the house of representatives, one (1) by the minority leader of the house of representatives and one (1) by the minority leader of the senate. Not more than three (3) of the members appointed by the governor shall be affiliated with the same political party.
 
 
 39
 "(b ) ... One of the members appointed by the governor shall be designated by the governor to be chairperson of the commission. A majority vote of six (6) members of the commission shall be required for any action of the commission."The contentions of the parties are summarized by the certifying court as follows:
 
 
 40
 "The plaintiff's argument is that the Commission in its present form in and of itself violates the principle of separation of powers because although there is a majority appointed by members of the legislature, it functions in a predominantly executive manner. Plaintiff argues that this constitutes usurpation of executive power by the legislative department of government and thereby violates the Kansas Constitution....
 
 
 41
 "The defendants contend that the Act here in question is constitutional under Kansas law for the reason that a perfect separation of powers is not required by the Constitution or laws of Kansas, and that neither in form nor in substance does the Act constitute a usurpation by the legislature, which is the accepted test enunciated in State, ex rel., v. Bennett, 219 Kan. 285, 287, 547 P.2d 786 (1976)."
 
 
 42
 In a well reasoned opinion the trial judge concluded the statute does not violate the principle of separation of powers. Parcell v. State of Kan., 468 F.Supp. at 1276-1280. We agree.
 
 
 43
 The trial judge correctly concluded: (1) Neither the United States Constitution nor the Kansas Constitution expressly provides for separation of powers; (2) states are not required to abide by the doctrine of separation of powers; and (3) Kansas decisions have adopted the separation of powers doctrine. Authority for these well established general principles of law is set forth in the trial court's opinion and needs not be repeated herein.
 
 
 44
 The leading Kansas case concerned with the application of the separation of powers doctrine is State, ex rel., v. Bennett, 219 Kan. 285, 547 P.2d 786 (1976), which held at 290-291, 547 P.2d 786:
 
 
 45
 "When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented.
 
 
 46
 "The problem, of course, is to determine whether or not a usurpation of powers has taken place. That term has not heretofore been clearly defined. It has been suggested that to have a usurpation one department of the government must be subjected directly or indirectly to the coercive influence of the other. (Citations omitted.) It seems to us that to have a usurpation of powers there must be a significant interference by one department with the operations of another department. In determining whether or not an unconstitutional usurpation of powers exists, there are a number of factors properly to be considered. First is the essential nature of the power being exercised. Is the power exclusively executive or legislative or is it a blend of the two? A second factor is the degree of control by the legislative department in the exercise of power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature? A fourth consideration could be the practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available. We do not wish to imply that these are the only factors which should be considered but it seems to us that they have special significance in determining whether a usurpation of powers has been demonstrated."
 
 
 47
 Obviously, to determine whether there has been a usurpation we must first carefully examine what the Governmental Ethics Commission is and what it does. The Commission is empowered to adopt rules and regulations for the administration of the Campaign Finance Act (K.S.A.1979 Supp. 25-4119a). The Commission prescribes the forms upon which reports of campaign expenditures are to be made (K.S.A.1979 Supp. 25-4111), although the completed reports are to be filed with the secretary of state. The Commission reviews the reports of elected state officials. The Commission may issue advisory opinions on questions concerning the application of the act (K.S.A.1979 Supp. 25-4120). The Commission investigates complaints of alleged violations of the Campaign Finance Act and conducts hearings thereon. If the Commission concludes a violation of the act has occurred, a copy of the report is to be sent to the appropriate county or district attorney as well as to the attorney general (K.S.A.1979 Supp. 25-4125). If the person the Commission has found to have violated the act wins the election, then a copy of the report goes to the head of that branch of government supreme court, governor, or legislature (K.S.A.1979 Supp. 25-4127). Notably absent is any means for the Commission to enforce compliance with the act or penalize violators thereof. It only investigates and reports to those who have authority to penalize or enforce.
 
 
 48
 Clearly, the Commission exercises powers traditionally ascribed to the legislative and the executive branches, but, as stated in State, ex rel., v. Bennett, 219 Kan. 285, 547 P.2d 786, unless one branch is usurping the power of another and coercively influencing the other there is no violation of the doctrine of separation of powers.
 
 
 49
 In Parcell v. State of Kan. at 1279, the trial court analyzed this second factor from Bennett as follows:
 
 
 50
 "Second, we must determine the degree of control by the legislative departments in the exercise of power. In Bennett, supra, 219 Kan. at 290, 547 P.2d 786, the Kansas court stated the question as, 'Is there a coercive influence or a mere cooperative venture?' Under the appointment plan, four designated legislators individually appoint a total of six members of the Commission. The governor appoints the remaining five members. Unlike the Federal Election Commission in Buckley (Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)), the appointments do not appear to be subject to confirmation by the legislature. The vote of six of the members is necessary to conduct business. K.S.A. 25-4119a. We are convinced that the legislature's control of the Commission is not coercive.
 
 
 51
 "The defendants further stress that at least two and as many as four of the legislative appointments would be of the same political party as the governor, assuming party lines were followed. The governor may appoint no more than three members from the same party. K.S.A. 25-4119a(a). Again assuming conformity with party lines, at least five and no more than seven of the members would be of the same party as the executive. This indicates again the intent of the legislature to establish a balanced commission."
 
 
 52
 We agree. Clearly, this is a cooperative venture rather than the usurpation of power by the legislative branch from the executive branch. Additionally, we note the chairperson is an appointee of the governor, which is another effort to balance the Commission.
 
 
 53
 The Commission investigates members of both the legislative and executive branches of government. As correctly noted by the trial court at page 1279:
 
 
 54
 "The third factor is the nature of the objectives sought to be attained by the legislature. In Bennett, supra (219 Kan. 285), at 290, 547 P.2d at 792, the Kansas court states the relevant question as, 'Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature?' Defendants contend the goal of the KCFA is to increase the public trust in our elected officials. The Commission reviews the campaign finances of elected state officials from all branches of government. To insure fair consideration, the legislature divided the power of appointment between the legislative and executive departments. Clearly this division gives the Commission needed independence should it be called upon to investigate those officials who appointed some of its members. In no instance does a single official, whether governor or a legislator, appoint a majority of the Commission."
 
 
 55
 The trial court further concluded that the practical result of the blending of the powers (the fourth factor in Bennett ) was not a violation of the separation of powers doctrine. We agree.
 
 
 56
 We conclude that the Governmental Ethics Commission, the majority of which is appointed by legislators, does not constitute a usurpation of executive power by the legislative branch of government and does not violate the doctrine of separation of powers as the same is recognized as a part of the Kansas Constitution.
 
 
 57
 IT IS SO ORDERED.