NOT DESIGNATED FOR PUBLICATION

No. 122,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

CHRISTINA YOCKY
*Appellee*,

and

JEFFREY YOCKY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFF DEWEY, judge. Opinion filed May 7, 2021. Affirmed.

*Stephen M. Turley*, of Wagle & Turley, LLC, of Wichita, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: A court, following the Kansas Child Support Guidelines, sanctioned Jeff Yocky for failing to report a material change in his financial circumstances to his ex-wife, Christina Yocky, and he appeals. He argues that the Kansas Supreme Court violated the separation of powers doctrine by promulgating those rules that require a parent to report changes in financial circumstances and then allow a court to order sanctions if a parent fails to do so. He asks us to set aside his sanction order and to strike those rules. We will do neither.

1

*The case history reveals a divorce and a continuing child support order.*

Jeff and Christina were married in 2004. They had two children, and then divorced in 2015. Jeff agreed to pay $1,193 per month to Christina in child support. That amount was based, in part, on Jeff's yearly income, which was $66,000 when they divorced. Their daughter resides with Jeff. Based on this living arrangement, the court reduced Jeff's monthly child support payments.

Circumstances changed. Jeff Yocky's income climbed over the next several years. He earned about $90,000 in 2016, about $112,000 in 2017, and about $130,000 in 2018. He did not report any income increase to Christina or to the court. Christina asked in February 2018 for a review of his child support obligation. After she looked over his pay stubs and W-2 statements, she moved for sanctions under Section V.B.2. of the Kansas Child Support Guidelines for failing to report the change in his financial circumstances. See Kansas Child Support Guidelines, § V.B.2. (2020 Kan. S. Ct. R. 123).

The court found that he had "failed to disclose sizable increases to his income," and those increases "would have significantly increased the child support," and thus "constitute[d] a material change in circumstance." The court modified Jeff's child support obligation and ordered him to pay Christina more than $14,000 in sanctions. It structured the sanctions award as a monthly payment of about $250 for 59 months. This made his total child support payment as $964 per month.

On appeal, Jeff Yocky does not dispute that he failed to report a material change in his financial circumstances. Instead, he contends that the income reporting and sanctions rules in the Kansas Child Support Guidelines are invalid because the Kansas Supreme Court violated the separation of powers doctrine when it promulgated them. As a result, he asks us to vacate the district court's sanctions order.

2

We will first make a brief review of how the Guidelines came about and then take a closer look at his argument.

The Kansas Legislature delegated to the Kansas Supreme Court the authority to "adopt rules establishing guidelines for the amount of child support to be ordered in any action" in K.S.A. 2020 Supp. 20-165(a). Subsection (b) of that statute sets out a nonexclusive list of factors that the Kansas Supreme Court should consider when formulating those guidelines. These include the standards of living and the circumstances of the parents, the relative financial means of the parents, and the earning ability of the parents. See K.S.A. 2020 Supp. 20-165(b)(2)-(4).

In response, the Supreme Court adopted the Child Support Guidelines as part of the Supreme Court Rules. The Guidelines "are the basis for establishing and reviewing child support orders in Kansas," and "[j]udges and hearing officers must follow" them. Kansas Child Support Guidelines § I. (2020 Kan. S. Ct. R. 93).

We must focus on Section V. of the Guidelines. That section requires parents to report certain financial changes and allows the court to sanction them if they fail to do so. Under Section V.B.1., "[a] parent shall notify the other parent of any change of financial circumstances" when it "could constitute a material change of circumstances." Kansas Child Support Guidelines § V.B.1. (2020 Kan. S. Ct. R. 123.) If a parent breaches that duty, "the court may determine the dollar value of a party's failure to disclose and assess the amount" against the breaching party. The court "may also adopt other sanctions." Kansas Child Support Guidelines § V.B.2. (2020 Kan. S. Ct. R. 123.) We move now to Jeff Yocky's contentions.

Frankly, he contends that the Kansas Supreme Court has engaged in law-making when it created and adopted these income reporting and sanction rules. In his view, this violates the separation of powers doctrine. Even though neither the United States

3

Constitution nor the Kansas Constitution explicitly state the separation of powers doctrine, it is recognized as "an inherent and integral element of the republican form of government.'" *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 882, 179 P.3d 366 (2008) (quoting *Van Sickle v. Shanahan*, 212 Kan. 426, 447, 511 P.2d 223 [1973]).

Our Supreme Court in *Morrison*, rejected a strict separation between the powers and functions of the legislative, judicial, and executive branches of government. 285 Kan. at 883. Indeed, the court stated, "there is an overlap and blending of functions, resulting in complementary activity by the different branches that makes absolute separation of powers impossible." 285 Kan. at 883.

Three general principles guide any analysis of separation of power issues. They are:

- First, a court must presume that a challenged statute is constitutional. If there is any reasonable way to construe it as valid, the court must do so;
- second, the court must consider the specific facts and circumstances presented and analyze whether one branch of government has usurped the powers of another branch of government; and
- third, one branch of government usurps the powers of another branch only when there is significant interference with the other branch's operation.

*Morrison*, 285 Kan. at 883-84.

As we go deeper in analyzing these questions, additional matters become important. When considering whether there is significant interference, courts should consider four factors:

- the essential nature of the power being exercised;
- the degree of control by one branch over another;
- the objective of the branch's actions; and

4

- the practical result of the blending of powers.

*Morrison*, 285 Kan. at 884.

Our Supreme Court has relied on these factors when analyzing separation of powers challenges for the last 45 years. See, e.g., *Solomon v. State*, 303 Kan. 512, 526, 364 P.3d 536 (2015); *Morrison*, 285 Kan. at 883-84; *State ex rel. Schneider v. Bennett*, 219 Kan. 285, 290, 547 P.2d 786 (1976).

Jeff Yocky chose to avoid all of these factors and, instead, makes a very narrow attack on the Guidelines' enabling statute—K.S.A. 2020 Supp. 20-165(a). Based on a narrow reading of that language, he contends that the Kansas Supreme Court exceeded its statutory authority when it promulgated the reporting and sanctions rules.

He argues that because the statute directs our Supreme Court to establish guidelines to determine "the amount of child support to be ordered," the Kansas Supreme Court is authorized only to define the mathematical procedure for calculating the *amount* of a child support obligation. In other words, the Court can do no more than that. Thus, in his view, the sanctions and income reporting rules exceed that narrow delegation of power from the Legislature because the Supreme Court's rule-making authority "is limited to rules necessary to implement the court's constitutional and statutory authority." *Jones v. Continental Can Co.*, 260 Kan. 547, 558, 920 P.2d 939 (1996). We reject this extremely narrow interpretation because it ignores the rest of the statute.

The statute is broader than what he suggests. After directing the Kansas Supreme Court to establish child support guidelines in subsection (a), the Legislature directs the court to consider "all relevant factors" and then specifies several factors in a nonexclusive list:

5

"(b) In adopting such rules, the court shall consider all relevant factors, including, but not limited to:

      (1) The needs of the child;

      (2) the standards of living and circumstances of the parents;

      (3) the relative financial means of the parents;

      (4) the earning ability of the parents;

      (5) the need and capacity of the child for education;

      (6) the age of the child;

      (7) the financial resources and earning ability of the child;

      (8) the responsibility of the parents for the support of others; and

      (9) the value of services contributed by both parents."

K.S.A. 2020 Supp. 20-165(b).

After reading the entire statute and not just the portion he focused on, it is clear that the Legislature specifically asked the Kansas Supreme Court to consider "all factors." These factors included the parents' standards of living, their financial means, and their earning ability when promulgating child support guidelines. These are broad subjects for the Court to consider, and the law does not confine the Court to just simply make a mathematical calculation.

Given that broad authority, we reject the argument that the income reporting and sanctions rules are outside the scope of the Legislature's delegation of power to the Kansas Supreme Court. The Legislature wanted the Court to heed these factors and the Supreme Court created a way to obtain the financial information our courts needed when they were creating fair and reasonable child support orders.

We hold that the Guidelines do not violate the separation of powers doctrine. And we will not modify the sanction order imposed in this case.

Affirmed.