## STATE OF OHIO ON RELATION OF DAVIS *v.* HILDEBRANT, SECRETARY OF STATE OF OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 987. Submitted May 22, 1916.—Decided June 12, 1916.

Whether the guarantee of a republican form of government has been disregarded by the action of the people of a State in amending its Constitution presents no justiciable controversy, but involves the exercise by Congress of the authority vested in it by the Constitution.

Under the referendum amendment of 1912 to the constitution of Ohio, the people of that State having disapproved of the state redistricting law passed after Congress had enacted the apportionment act of 1911, and the state court having held that under the referendum amendment the legislative power was reserved in the people to be expressed by referendum *held*, that:

The decision of the highest court of the State, that under such amendment the legislative power of the State is now vested not only in the General Assembly but also in the people by referendum and that a law disapproved by the referendum was no law, is conclusive here.

Nothing in the act of Congress of August 8, 1911, 37 Stat. 13, apportioning representation among the States, prevents the people of a State from reserving a right of approval or disapproval by referendum of a state act redistricting the State for the purpose of congressional elections.

THE facts, which involve the construction and effect of the referendum amendment of 1912 to the constitution of the State of Ohio, are stated in the opinion.

*Mr. Sherman J. McPherson* for plaintiff in error.

*Mr. Edward C. Turner,* Attorney General of the State of Ohio, *Mr. Edmond H. Moore* and *Mr. Timothy S. Hogan,* for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

By an amendment to the constitution of Ohio adopted September 3, 1912, the legislative power was expressly declared to be vested not only in the Senate and House of Representatives of the State, constituting the General Assembly, but in the people in whom a right was reserved by way of referendum to approve or disapprove by popular vote any law enacted by the General Assembly. And by other constitutional provisions the machinery to carry out the referendum was created. Briefly they were this: Within a certain time after the enactment of a law by the Senate and House of Representatives and its approval by the Governor, upon petition of six percentum of the voters the question of whether the law should become operative was to be submitted to a vote of the people and if approved, the law should be operative, and if not approved, it should have no effect whatever.

In May, 1915, the General Assembly of Ohio passed an act redistricting the State for the purpose of congressional elections by which act twenty-two congressional districts were created in some respects differing from the previously established districts, and this act after approval by the Governor was filed in the office of the Secretary of State. The requisite number of electors under the referendum provision having petitioned for a submission of the law to a popular vote, such vote was taken and the law was disapproved. Thereupon in the Supreme Court of the State the suit before us was begun against state election officers for the purpose of procuring a mandamus directing them to disregard the vote of the people on the referendum disapproving the law and to proceed to discharge their duties as such officers in the next congressional election upon the assumption that the action by way of referendum was void and that the law which was disapproved was

subsisting and valid. The right to this relief was based upon the charge that the referendum vote was not and could not be a part of the legislative authority of the State and therefore could have no influence on the subject of the law creating congressional districts for the purpose of representation in Congress. Indeed it was in substance charged that both from the point of view of the state constitution and laws and from that of the Constitution of the United States, especially § 4 of Article I providing that "The Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations except as to Places of choosing Senators", and also from that of the provisions of the controlling act of Congress of August 8, 1911 (c. 5, 37 Stat. 13) apportioning representation among the States, the attempt to make the referendum a component part of the legislative authority empowered to deal with the election of members of Congress was absolutely void. The court below adversely disposed of these contentions and held that the provision as to referendum was a part of the legislative power of the State, made so by the Constitution, and that nothing in the act of Congress of 1911 or in the constitutional provision operated to the contrary and that therefore the disapproved law had no existence and was not entitled to be enforced by mandamus.

. Without going into the many irrelevant points which are pressed in the argument and the various inapposite authorities cited, although we have considered them all, we think it is apparent that the whole case and every real question in it will be disposed of by looking at it from three points of view—the state power, the power of Congress, and the operation of the provision of the Constitution of the United States referred to.

1. As to the state power, we pass from its consideration,

since it is obvious that the decision below is conclusive on that subject and makes it clear that so far as the State had the power to do it, the referendum constituted a part of the state constitution and laws and was contained within the legislative power and therefore the claim that the law which was disapproved and was no law under the constitution and laws of the State was yet valid and operative, is conclusively established to be wanting in merit.

.2. So far as the subject may be influenced by the power of Congress, that is, to the extent that the will of Congress has been expressed on the subject, we think the case is equally without merit. We say this because we think it is clear that Congress in 1911 in enacting the controlling law concerning the duties of the States through their legislative authority, to deal with the subject of the creation of congressional districts expressly modified the phraseology of the previous acts relating to that subject by inserting a clause plainly intended to provide that where by the state constitution and laws the referendum was treated as part of the legislative power, the power as thus constituted should be held and treated to be the state legislative power for the purpose of creating congressional districts by law. This is the case since under the act of Congress dealing with apportionment which preceded the act of 1911, by § 4 it was commanded that the existing districts in a State should continue in force "until the legislature of such State in the manner herein prescribed shall redistrict such state," (act of February 7, 1891, c. 116; 26 Stat. 735), while in the act of 1911 there was substituted a provision that the redistricting should be made by a State "in the manner provided by the laws thereof." And the legislative history of this last act. leaves no room for doubt that the prior words were stricken out and the new words inserted for the express purpose, in so far as Congress had power to do

it, of excluding the possibility of making the contention as to referendum which is now urged. Cong. Rec., Vol. 47, pp. 3436, 3437, 3507.

3. To the extent that the contention urges that to include the referendum within state legislative power for the purpose of apportionment is repugnant to § 4 of Article I of the Constitution, and hence void even if sanctioned by Congress because beyond the constitutional authority of that body, and hence that it is the duty of the judicial power so to declare, we again think the contention is plainly without substance for the following reasons: It must rest upon the assumption that to include the referendum in the scope of the legislative power is to introduce a virus which destroys that power, which in effect annihilates representative government and causes a State where such condition exists to be not republican in form in violation of the guarantee of the Constitution. Const., § 4, Art. IV. But the proposition and the argument disregard the settled rule that the question of whether that guarantee of the Constitution has been disregarded presents no justiciable controversy but involves the exercise by Congress of the authority vested in it by the Constitution. *Pacific Telephone Co.* v. *Oregon,* 223 U. S. 118. In so far as the proposition challenges the power of Congress as manifested by the clause in the act of 1911 treating the referendum as a part of the legislative power for the purpose of apportionment where so ordained by the state constitutions and laws, the argument but asserts, on the one hand, that Congress had no power to do that which from the point of view of § 4 of Article I, previously considered, the Constitution expressly gave the right to do. In so far as the proposition may be considered as asserting, on the other hand, that any attempt by Congress to recognize the referendum as a part of the legislative authority of a State is obnoxious to a republican form of government as provided by § 4

of Article IV, the contention necessarily but reasserts the proposition on that subject previously adversely disposed of. And that this is the inevitable result of the contention is plainly manifest, since at best the proposition comes to the assertion that because Congress, upon whom the Constitution has conferred the exclusive authority to uphold the guarantee of a republican form of government, has done something which it is deemed is repugnant to that guarantee, therefore there was automatically created judicial authority to go beyond the limits of judicial power and in doing so to usurp congressional power on the ground that Congress had mistakenly dealt with a subject which was within its exclusive control free from judicial interference.

It is apparent from these reasons that there must either be a dismissal for want of jurisdiction because there is no power to reëxamine the state questions foreclosed by the decision below and because of the want of merit in the Federal questions relied upon, or a judgment of affirmance, it being absolutely indifferent as to the result which of the two be applied. In view, however, of the subject-matter of the controversy and the Federal characteristics which inhere in it, we are of opinion, applying the rule laid down in *Swafford* v. *Templeton*, 185 U. S. 487, the decree proper to be rendered is one of affirmance and such a decree is therefore ordered.

*Affirmed.*