In the Matter of the Application of SAMUEL S. KOENIG and Others, Appellants, for a Mandamus Order against EDWARD J. FLYNN, Secretary of State of the State of New York, Respondent, and JAMES A. FARLEY, Chairman of the Democratic State Committee, Intervenor, Respondent.*

Third Department, December 30, 1931.

*Abraham S. Gilbert* and *Benjamin L. Fairchild,* for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, First Assistant Attorney-General,* of counsel], for the respondent Secretary of State.

*John Godfrey Saxe* [*Robert F. Wagner* and *John J. O'Connor* of counsel], for the respondent James A. Farley, intervenor.

VAN KIRK, P. J. The application to the Special Term was for a mandamus order directing the Secretary of State to perform the duties imposed upon him by statute in respect to the election

* Affg. 141 Misc. 840; affd., 258 N. Y. 292.

of Representatives in Congress in the year 1932 under a reapportionment of congressional districts as fixed by a " concurrent resolution " of the Senate and Assembly of this State. The Special Term entered an order denying the application as matter of law and not in the exercise of discretion, without costs. The appeal is from that order. A question of law and not a matter of discretion is here involved.

The concurrent resolution was not presented to the Governor. The mandamus order was sought on the ground that this resolution, without the Governor's approval, was a valid compliance with article 1, section 4, of the Federal Constitution, which provides: " Control of congressional elections. 1. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." The respondent contends that compliance can only be had by act of the law-making power of the State. Thus the determining question in the case is whether the delegation of power, for the purpose stated, is to the Senate and Assembly alone or to the law-making power. We shall discuss this question by considering the case, *first,* in respect to the laws of the State; and, *second,* in respect to the Federal Constitution.

Our State Constitution contains no provision in respect to redistricting for the election of Representatives in Congress. It does make definite provisions for redistricting for election of members of the State Legislature. (Art. 3, §§ 4, 5.) The Legislature has in a long series of *statutes* provided for redistricting the State for election of Representatives. As occasion arose a separate act or bill has been passed and approved by the Governor.

The State Constitution, article 3, section 1, provides: " The legislative power of this State shall be vested in the Senate and Assembly." The Governor of the State is no part of the Senate and Assembly. He takes no part in the original framing of a bill or resolution. He has no seat in either house and no right to debate therein. But he has a veto power (Const. art. 4, § 9) as follows: " Every bill which shall have passed the Senate and Assembly shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it shall have originated, which shall enter the objections at large on the journal, and proceed to reconsider it." This section further provides that, if after veto the bill is passed by a two-thirds vote of each house, " it shall become a law notwithstanding the objections of the Governor." Thus the Senate and Assembly may enact a valid law despite the

exercise of the veto power, but they are not the complete law-making power. While the legislative department of the State is distinct from the executive department, the veto power is an express power conferred upon the executive and is a check upon the legislative power. (*People ex rel. Broderick* v. *Morton*, 156 N. Y. 136, 144.) Thus, while the Governor is strictly no part of the Senate or Assembly, he is a part of the law-making power. The two above-quoted sections of the Constitution must be read together. Both are operative. The Governor has power to act in respect to legislation. In reviewing an act passed by both houses, when presented to him, he has before him the questions of the constitutionality, the expediency of, and the necessity for the act. If he disapproves, he must state his objections thereto. Call his authority what we may he considers the bill as presumably the members and the senators had considered it. It was early held that he has a part in the enactment of laws, is " a participator in the function of making laws." (*People* v. *Bowen*, 21 N. Y. 517, 522.) This view has prevailed to the last opinion of the Court of Appeals, where it was held that the Legislature is not the sole custodian of legislative power. " The power is divided between the Legislature and the Governor." (*Matter of Doyle*, 257 N. Y. 244, 261.)

In the State Constitution the " Legislature " is authorized to do many things which cannot be accomplished save by the functioning of the full law-making power. Among other things the Legislature is given power to alter Senatorial and Assembly districts. (State Const. art. 3, §§ 4, 5.) This has uniformly been accomplished by statute, by act of the full legislative power, never by " concurrent resolution." (See *Matter of Reynolds*, 202 N. Y. 430.) In like manner, until this year, this State has been redistricted for congressional elections by statute, the bill therefor having been presented to the Governor after it was passed by both houses. There can be no doubt then that, in the State Constitution, in the courts and in legislative acts, this State has used the word " Legislature " as meaning legislative, or law-making, power. As to the State, this seems conclusive. (*Davis* v. *Ohio*, 241 U. S. 565, 567.)

We turn then to the Federal Constitution, article 1, section 4 (*supra*), and to the Federal courts, where we find a like construction. It is true there are a number of provisions in the Federal Constitution which delegate to the State Legislature duties which do not involve law making. Article 1, section 3, prior to the Seventeenth Amendment, provided that Senators should be chosen in each State by the Legislature thereof. Choosing Senators by the Legislature required no apportionment or districting; it required no action by the law-making power. We shall refer to this later.

Article 5 provides for amendments to the Federal Constitution, which amendments shall be valid when ratified by the Legislatures of three-fourths of the several States, or by conventions in three-fourths thereof. In *Hawke* v. *Smith, No. 1* (253 U. S. 221, 226) it is said: "Both methods of ratification, by Legislatures or conventions, call for action by deliberative assemblages representative of the people, which it was assumed would voice the will of the people." And it was held that the adoption of an amendment did not require an act of the law-making power. The delegation to Legislatures of the power to prescribe regulations for the election of Representatives in Congress is not mentioned in the opinion; nor is it held that, if a duty imposed upon the "Legislature" involves law making, the word "Legislature" would not mean the law-making power. Redistricting for the election of Representatives requires the enactment of a statute, as does redistricting for the election of State Senators and Assemblymen. This law-making power is the natural and usual power to prescribe "times, places and manner of holding elections;" it is an appropriate power for making an authoritative rule of action to be observed by officers and citizens of a State. We think the delegation of authority to prescribe regulations for elections of Representatives in Congress is to the Legislature as the law-making power. That this was the intent of the framers of the Federal Constitution is further indicated by the fact that the power "by law [to] make or alter such regulations" was reserved in Congress. If alterations are to be made by law, why should not the regulations altered be so made?

Until recently this has been the construction of this section of the Federal Constitution by the States generally; elections have been conducted in compliance with statutes enacted under this construction and the validity of those elections has not been questioned. In the States redistricting for State elections has uniformly been accomplished by statute. Such general construction should have great weight, unless in violation of the plain mandates of the Constitution. (*Gardner* v. *Ginther*, 232 App. Div. 296, 301, and cases cited.) We find no plain mandate of the Constitution which has been violated by the practice which has been followed by the Federal Government and by the States for many years. The elaborate and able arguments, supported by plentiful authorities, in this case, indicate that the meaning of this section is not entirely plain to all. If petitioners' contention is correct, some seven score years of erroneous practice passed before this alleged plain meaning was discovered.

We find support for our position in *Davis* v. *Ohio* (241 U. S. 565).

When that case arose the Constitution of Ohio had been amended to provide that, after the enactment of a law by the Senate and House of Representatives and its approval by the Governor, upon petition, the question whether the law should become operative was to be submitted to a vote of the people and, if approved, the law should be operative. A bill redistricting the State for Congressional elections had been passed and approved by the Governor. A referendum was had and the statute was disapproved. A mandamus order was asked directing the State election officers to disregard the vote of the people on the referendum. The lower court held that the referendum was a part of the legislative power of the State and that nothing in the act of Congress of 1911, or in the constitutional provision, operated to the contrary. Therefore, the disapproved law had no existence and was not entitled to be enforced by mandamus. On appeal to the United States Supreme Court the decree of the lower court upholding the referendum vote as part of the legislative power was affirmed. This was necessarily a holding that, in that case, the word " Legislature " in article 1, section 4, of the Federal Constitution meant the law-making body of the State. In the opinion reference is made to the Federal act of August 8, 1911 (37 U. S. Stat. at Large, 13, chap. 5), which provided that redistricting should be made by a State " in the manner provided by the laws thereof." This introduces nothing in conflict with our view. The power to redistrict was delegated by the Constitution, not by Congress. The act of 1911 was an act of Congress. An act of Congress could in no wise change the Constitution. That which the Constitution meant when it was adopted it still meant when Congress passed the act of 1911. Thus, when Congress passed this act, it but declared its understanding of this section of the Federal Constitution to be that the power to redistrict was delegated to the Legislature as the law-making power. So, as we understand, the United States Supreme Court held in *Hawke* v. *Smith* (*supra*, 230), where the opinion in the *Davis* case is construed as follows: " It dealt with article 1, § 4, of the Constitution, which provides that the times, places and manners of holding elections for Senators and Representatives in each State shall be determined by the respective Legislatures thereof, but that Congress may at any time make or alter such regulations, except as to the place for choosing Senators. As shown in the opinion in that case, Congress had itself recognized the referendum as part of the legislative authority of the State for the purpose stated. It was held, affirming the judgment of the Supreme Court of Ohio, that the referendum provision of the State Constitution when applied to a law redistricting the State with a view to representation in Congress was not

unconstitutional. Article 1, § 4, plainly gives authority to the State to legislate within the limitations therein named. Such legislative action is entirely different from the requirement of the Constitution as to the expression of assent or dissent to a proposed amendment to the Constitution. In such expression no legislative action is authorized or required." It seems to us that these two cases hold very plainly that the word " Legislature " in article 1, section 4, means, where legislative action " is authorized or required," the law-making power.

We have not overlooked the argument that, since article 1, section 4, of the Federal Constitution uses the same language in respect to elections for Senators and Representatives and since the election of Federal Senators is conceded, formerly, to have been by the votes of the members of the two houses only, the redistricting must be made by the two houses only; that is, the word " Legislature " must have the same meaning in one case as in the other. We cannot consent. The distinction is stated in *Hawke* v. *Smith* (*supra*). Also there are the other sections in article 1 of the Federal Constitution. Section 3, subdivision 1, before the Seventeenth Amendment was adopted, provided that Senators shall be chosen by the Legislature. In the choosing of Senators then, the members of the Legislature were required in some form to vote. The majority of the votes determined the successful candidate. A Governor was not a member of a State Senate or Assembly. He had not a right to vote. Neither could he defeat the choice of the majority by a veto. It could not have been intended that a Governor, a member of one party, could defeat by veto the election of a candidate of another party, which had a majority, but not a two-thirds majority, in the two houses. Evidently no action by the law-making body as such was intended. Section 2, subdivision 1, provides that Representatives be chosen " by the people of the several States." Subdivision 3 of this section provides for the enumeration of the voters in each State for the apportionment of members to each State. Then (Section 4) follows the delegation of power to prescribe the " times, places and manner " of holding elections. This is a power quite different from the power to choose a Senator. This delegated power to prescribe regulations is also a mandate. It involves a redistricting of the State. This is to be made by a State in the manner prescribed by the laws thereof, not by votes of the individual members. It is an act of the law-making power.

The ultimate regulation of the " times, places and manner " of holding elections for Representatives is in the Federal Congress. The Federal Constitution has delegated this power to regulate to the State Legislatures, but has reserved in Congress the power to

" make or alter such regulations." State laws prevail unless altered by Congress. (*Matter of Coy*, 127 U. S. 731, 752.) In no respect, material in our view of this case, has Congress altered any law of, or practice in, this State in respect to the election of Representatives in Congress.

We conclude that article 1, section 4, of the Federal Constitution delegates to the State Legislature authority to take such action as is customary and necessary under the law of the State to make effective its mandate; whether such delegation of authority is to the Senate and Assembly solely or to the legislative power depends upon the purpose stated; that, where the action involves the law-making power, that power is to be exercised; prescribing in each State the times, places and manner of holding elections for Representatives involves the law-making power of the State; the law-making power in this State is the Legislature (Senate and Assembly) and the Governor; the delegation of authority in this case was to the law-making power.

Believing that we are right in this conclusion, we do not find it necessary to consider the many other points urged in the briefs.

The order should be affirmed as a matter of law and not in the exercise of discretion.

All concur; HILL, J., with an opinion in which all concur.

HILL, J. (concurring). The government of the Union is supreme within its sphere of action. (*M'Culloch* v. *State of Maryland*, 4 Wheat, 316, 405.) First in importance within that sphere is the selection of the persons who are to perform governmental duties. The untrammeled right to select rulers and officials is the primary prerequisite of every free people and nation. No State in the Union holds a suzerainty as to the selection of National legislators or other officials. Such powers as any State or its officials may exercise have been delegated by the Constitution or by the Congress under the Constitution. The Constitution speaks with greater definiteness as to this than as to other matters of less relative importance. " The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." (Art. 1, § 2.) The provision as to the Senate, prior to the Seventeenth Amendment, was equally definite, " The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof, for six Years." (Art. 1, § 3.) After definitely fixing the qualifications of electors

who may vote for the members of each branch of the Congress, the Constitution, by a procedural section (Art. 1, § 4), provides concerning the opportunity to be given for voting and the machinery of the elections. "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." The State Legislatures were empowered by this delegation of authority to prescribe regulations for the election of Representatives. Legislatures prescribe regulations of conduct by enacting laws. Laws enacted by the Legislature of this State are submitted to the Governor for his approval.

This delegated power may be taken away at any time, for " the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." The Federal act of 1911 (37 U. S. Stat. at Large, 13, chap. 5) by its terms was limited to the apportionment following the thirteenth census. The apportionment here involved is the one following the fifteenth census. The Federal act of 1929 (46 U. S. Stat. at Large, 21, chap. 28) contains no regulations as to redistricting. There being no Federal statute which applies, the Legislature, as a law-making body, has full authority under the power delegated to it by section 4 of article 1 of the Federal Constitution to prescribe regulations in respect of " The Times, Places and Manner of holding Elections for  *  *  * Representatives." This includes redistricting. The law which the Legislature enacts will continue in full force until such time as " Congress may  *  *  * by Law " modify it, or " by Law " make new regulations.

Each provision of the Election Law of this State which applies to the election of Representatives in Congress has been passed under the authority delegated to the Legislature as a law-making body by this provision of the Federal Constitution. Section 298 of the Election Law fixes the time and place " of holding Elections for *  *  * Representatives." The Governor participated in the enactment of that section. If redistricting, which also has to do with the " Places and Manner of holding Elections for  *  *  * Representatives " is to be accomplished by concurrent resolution, then with equal force may it be argued that the above section of the Election Law should have been promulgated by means of a concurrent resolution. Likewise each provision of the Election Law, the Primary Election Law and the Corrupt Practices Act which pertains to the selection of Representatives in Congress should have been the subject of concurrent resolution, for the only power of the law-making body of this State in respect of the election of

Representatives in Congress is that delegated by this section of the Federal Constitution.

It is argued that "Legislature," as used in this section, is conceded to have the meaning contended for by the appellants, in so far as it applies to the election of Senators. If this were a fact, it would be a persuasive argument. Chief Justice MARSHALL, construing the meaning to be given "commerce" in the constitutional provision (U. S. Const. art. 1, § 8, subd. 3) as to the power of Congress "To regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes," said: "If this be the admitted meaning of the word, in its application to foreign nations, it must carry the same meaning throughout the sentence, and remain a unit, unless there be some plain, intelligible cause which alters it." (*Gibbons* v. *Ogden*, 9 Wheat. 1, 194.) But I fail to see any foundation for the argument. Article 1, section 3, provides that Senators be "chosen by the Legislature," thus describing collectively the persons who should vote, while in article 1, section 4, "Legislature" is used both as to Senators and Representatives as defining a law-making body that should prescribe regulations concerning "The Times, Places and Manner of" their election. And, if the "law-making" Legislature (Art. 1, § 4) failed in any or all particulars to prescribe regulations by law as to the "Times, Places and Manner" of holding elections for Senators, then the "voting" Legislature (Art. 1, § 3) might adopt rules for their own orderly conduct and guidance as voters.

There has been a practical construction of this section, not only each time that the several States have been redistricted for decades, but also each time that the law-making power in a State has enacted a provision of the Election Law which applies in whole or in part to the "Times, Places and Manner of holding Elections for * * * Representatives." If a doubt existed as to the meaning of the provision, a practice so long settled and established should be followed. (*Pocket Veto Case*, 279 U. S. 655, 688.)

I concur for affirmance.

Order affirmed.