**Doris E. PARCELL, Plaintiff,**

v.

**STATE OF KANSAS et al., Defendants.**

**Civ. A. No. 79–2015.**

United States District Court,
D. Kansas.

April 20, 1979.

James Yates, Kansas City, Kan., for plaintiff.

Dennis Prater, Lawrence, Kan. (General Counsel for the Kansas Government, Ethics Commission and Special Attorney General), for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This action is presently before the court for a decision on the merits of plaintiff's complaint. Plaintiff Parcell seeks a permanent injunction against defendants to halt enforcement of various provisions of the Kansas Campaign Finance Act [KCFA]. K.S.A. 25–4101 to 4141. Parcell alleges this court has jurisdiction over the claims under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

The following facts underlie this litigation. Prior to the fall, 1978 primary election in Wyandotte County, plaintiff published and distributed an article to some of the local registered voters. The article contained reprints of various newspaper articles and a signed statement by Parcell urging the defeat of Associate District Judge Donnelly and the election by write-in vote of Bill D. Robinson, Jr. Instructions for casting a write-in vote for Robinson on a voting machine were also given. Relative to the above acts of Parcell, a complaint was filed with the Governmental Ethics Commission by its executive director. The Commission is authorized to administer the KCFA. K.S.A. 25–4119b. The complaint to the Commission alleges:

"Doris Parcell violated K.S.A. 1977 Supp. 25–4110 by making contributions or expenditures for the purpose of influencing the nomination or election to state office of Bill D. Robinson, Jr. and Francis Donnelly in an aggregate amount of more than one hundred dollars ($100), by not making two statements disclosing these transactions and containing the information required by K.S.A. 1977 Supp. 25–4108, and by intentionally failing to file the two statements in the office of the Secretary of State when due. The two statements were due July 25, 1978 and August 11, 1978, respectively as specified in K.S.A. 1977 Supp. 25–4108. K.S.A. 1977 Supp. 25–4128 provides that the intentional failure to file such statements when due is a class A misdemeanor."

Kansas Statutes Annotated 25–4110 provides:

"25–4110. *Reports by certain persons; contents; filing.* Every person, other than a candidate or a candidate committee, party committee or political committee, who makes contributions or expenditures, other than by contribution to a candidate or a candidate committee, party committee or political committee, in an aggregate amount of one hundred dollars ($100) or more within a calendar year shall make statements containing the information required by K.S.A. 1975 Supp. 25–4108, and file them in the office of the secretary of state so that each such statement is in such office on the day specified in K.S.A. 1975 Supp. 25–4108. Reports made under this section need not be cumulative."

Kansas Statutes Annotated 25–4108 requires that financial disclosure statements be made to the Secretary of State at designated times with specified information.

Parcell filed this action attacking the constitutionality of various provisions of the KCFA and the makeup of the Governmental Ethics Commission. She moved for a restraining order to prevent the Commission from investigating her conduct in the publication and distribution of the literature until such time as the constitutional questions would be determined. A hearing was held on February 5, 1979 on the motion. Counsel for both parties were present. Questions arose concerning service of process and jurisdiction. Parcell stated that an amended complaint would be filed. Evidence was presented, arguments heard, and the matter was taken under advisement. The parties were permitted to file briefs by specified dates. The court also suggested that if the parties could stipulate to the facts involved, the court would decide the case on the merits. The parties concurred with this suggested procedure. An amended complaint was filed on February 22, 1979, along with plaintiff's brief. Defendants answered on March 2, 1979, and submitted a brief in opposition to injunctive relief. On April 6, 1979, the parties filed an agreed statement of facts. We are now prepared to rule on the merits of this action.

■ Although the action is framed in terms of seeking injunctive relief to protect this individual plaintiff from further subjection to the powers of the Governmental Ethics Commission, this case is in fact a constitutional challenge to the statutes the Commission is attempting to enforce. We begin our analysis by noting the well-recognized rule of construction presuming the constitutionality of a statute, all doubts must be resolved in favor of the statute's legality, and only a clear showing that the statute violates the constitution will justify striking the statute. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Leek v. Theis,* 217 Kan. 784, 539 P.2d 304 (1975); *Sutherland v. Ferguson,* 194 Kan. 35, 36, 397 P.2d 335 (1964); *Harris v. Shanahan,* 192 Kan. 183, 206–07, 387 P.2d 771 (1963); *State ex rel. Fatzer v. Board of Regents,* 167 Kan. 587, 596, (207 P.2d 373 (1949); *Carolene Producing Co. v. Mohler,* 152 Kan. 2, 8, 102 P.2d 1044 (1940).

■ Parcell first alleges that the Governmental Ethics Commission, as presently constituted, violates the doctrine of separation of powers. In conformity with K.S.A. 25–4119a(a), the parties stipulate that "[t]he Commission presently consists of

eleven members, five of whom are appointed by the Governor, two by the President of the Senate, two by the Speaker of the House of Representatives, one by the Minority Leader of the House of Representatives, and one by the Minority Leader of the Senate." Under plaintiff's theory, the Legislature has usurped the power of the executive by providing for legislative appointments for a majority of the members of the Commission.

■ Parcell contends that federal and Kansas cases can be used interchangeably since both jurisdictions recognize the doctrine of separation of powers. Plaintiff then relies primarily upon *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) and *State ex rel. Anderson v. State Office Bldg. Comm'n*, 185 Kan. 563, 345 P.2d 674 (1959). We do not agree that federal and Kansas cases on the doctrine may be used interchangeably. Neither the United States Constitution nor the Kansas Constitution expressly provides for separation of powers. In a similar challenge to a state statute establishing a commission to regulate the price of milk in Virginia, the United States Supreme Court considered plaintiff's argument that the statute was invalid as an unlawful delegation of legislative power. *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937). Therein the court stated:

"The Constitution of the United States in the circumstances here exhibited has no voice upon the subject. The statute challenged as invalid is one adopted by a state. This removes objections that might be worthy of consideration if we were dealing with an act of Congress. How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself. Nothing in the distribution here attempted supplies the basis for an exception. The statute is not a denial of a republican form of government. Constitution, Art. 4, § 4. Even if it were, the enforcement of that guarantee, according to the settled doctrine, is for Congress, not the courts. *Pacific States Telephone*

*Co. v. Oregon*, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377; *Davis v. Hildebrant*, 241 U.S. 565, 36 S.Ct. 708, 60 L.Ed. 1172; *Ohio ex rel. Bryant v. Akron Park District*, 281 U.S. 74, 79, 80, 50 S.Ct. 228, 74 L.Ed. 710."

States are not required to abide by the doctrine of separation of powers. *Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327 (1908); *Carfer v. Caldwell*, 200 U.S. 293, 26 S.Ct. 264, 50 L.Ed. 488 (1906); *Sweezy v. New Hampshire*, 354 U.S. 234, 255, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); *Dreyer v. Illinois*, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902). In *Dreyer* the Court stated, "Whether the legislative, executive and judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State." *Dreyer, supra*, at 84, 23 S.Ct. at 32.

Furthermore, plaintiff's reliance on *Buckley* is misplaced. *Buckley* dealt with issues similar to those raised in the instant case concerning the Federal Election Campaign Act [FECA]. The initial Federal Election Commission had four voting members appointed by the Congress and two by the President. The United States Supreme Court struck down the Commission as constituted for violating the separation of powers doctrine. Specifically, the Court found a violation of the Appointments Clause of the United States Constitution. That Clause reads in pertinent part:

"[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; . . ."

Clearly, the clause does not affect appointments of state officials.

To the contrary, the Kansas Constitution gives a power of appointment to the Legislature. Kansas Const., Art. 2, § 18 (1978 Supp.). The Kansas court has construed this provision in light of other constitutional requirements vesting the supreme executive power in a governor and the legislative power in a house of representatives and a senate. The court concluded: "The general power of appointment to public office under the Kansas Constitution is not an exclusive function of the executive, and the exercise of appointment is not inherently an executive function. Within constitutional limits the legislature, as representative of the people, can vest the power in its discretion." *Leek v. Theis, supra,* 217 Kan. at 802, 539 P.2d at 320. Accordingly, the mere fact that the Kansas Legislature provides that five members of the Governmental Ethics Commission be selected by the Governor and six by various members of the Legislature does not violate the doctrine of separation of powers.

Notwithstanding the absence of a federal requirement or the presence of a state determination that appointments are not exclusively within the province of the executive, the State of Kansas has adopted the doctrine of separation of powers. The state has not expressly done so through its constitution; the Kansas Supreme Court has found the doctrine implied in the organization of the state government into the executive, legislative and judicial departments. *State ex rel. Fatzer v. Ancient Order of United Workmen of Kansas,* 178 Kan. 69, 78, 283 P.2d 461 (1955); *State ex rel. Anderson v. State Office Bldg. Comm'n,* 185 Kan. 563, 345 P.2d 674 (1959). Recently, the Kansas court reiterated the state's recognition of the doctrine. "Like the Constitution of the United States, the Constitution of Kansas contains no express provision requiring the separation of powers, but all decisions of this court have taken for granted the constitutional doctrine of separation of powers between the three departments of the state government—legislative, executive and judicial." *State ex rel. Schneider v. Bennett,* 219 Kan. 285, 287, 547 P.2d 786, 790 (1976).

The Kansas court has held the doctrine of separation of powers is violated when one department significantly interferes with the operations of another department. *Id.* at 290, 547 P.2d 786. The following factors are relevant in determining whether usurpation of power by the legislative branch has occurred.

1. The essential nature of the power being exercised;
2. The degree of control by the legislative department in the exercise of the power.
3. The nature of the objectives sought to be obtained by the legislature.
4. The practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available. *Id.*

We shall consider these factors individually.

First, we must determine whether the essential nature of the power being exercised is legislative, executive, or a blend of the two. Plaintiff contends that only executive powers are being exercised while defendant maintains the Commission performs a mixed bag of executive, quasi-judicial and legislative functions. Both parties rely upon *Buckley, supra,* as offering guiding principles. The Court found the Federal Election Commission's powers fell into three categories.

1. Functions relating to the flow of necessary information—receipt, dissemination, and investigation.
2. Functions with respect to the Commission's task of fleshing out the statute—rule making and advisory opinions.
3. Functions necessary to insure compliance with the statute and rules—informal procedures, administrative determinations and hearings, and civil suits.

The court found the powers that were essentially investigative and informative to be legislative in nature. In the instant case, Parcell correctly points out that the Governmental Ethics Commission does not itself receive or disseminate the disclosure

statements; such statements are filed with the Secretary of State. K.S.A. 25–4108. However, the Commission has the power to investigate any matter required to be reported upon irrespective of whether a complaint has been filed. K.S.A. 25–4118(b). This investigative power is separate from that given to the Commission to investigate complaints and violations. K.S.A. 25–4122. It is this former type of investigation that relates to the flow of necessary information and is thus essentially legislative. Furthermore, the Commission submits an annual report and recommendations to both the governor and the legislature. K.S.A. 25–4119a(d). Accordingly, the powers of the Commission are a blend of legislative and executive functions.

Second, we must determine the degree of control by the legislative departments in the exercise of power. In *Bennett, supra,* 219 Kan. at 290, 547 P.2d 786, the Kansas court stated the question as, "Is there a coercive influence or a mere cooperative venture?" Under the appointment plan, four designated legislators individually appoint a total of six members of the Commission. The governor appoints the remaining five members. Unlike the Federal Election Commission in *Buckley,* the appointments do not appear to be subject to confirmation by the legislature. The vote of six of the members is necessary to conduct business. K.S.A. 25–4119a. We are convinced that the legislature's control of the Commission is not coercive.

The defendants further stress that at least two and as many as four of the legislative appointments would be of the same political party as the governor, assuming party lines were followed. The governor may appoint no more than three members from the same party. K.S.A. 25–4119a(a). Again assuming conformity with party lines, at least five and no more than seven of the members would be of the same party as the executive. This indicates again the intent of the legislature to establish a balanced commission.

The third factor is the nature of the objectives sought to be attained by the legislature. In *Bennett, supra,* at 290, 547 P.2d at 792, the Kansas court states the relevant question as, "Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature?" Defendants contend the goal of the KCFA is to increase the public trust in our elected officials. The Commission reviews the campaign finances of elected state officials from all branches of government. To insure fair consideration, the legislature divided the power of appointment between the legislative and executive departments. Clearly this division gives the Commission needed independence should it be called upon to investigate those officials who appointed some of its members. In no instance does a single official, whether governor or a legislator, appoint a majority of the Commission.

Closely related to the objective of a neutral, balanced Commission is the fourth consideration, the practical result of the blending of powers. The parties have stipulated that the Commission "routinely audits the campaign accounts of the appointing authorities, and has heard and determined complaints concerning its appointing authorities." We are not here to judge the effectiveness of these investigations. However, we find it probable that the multiple appointment scheme devised by the legislature aided the Commission in these investigations. Concerning a similar argument advanced on behalf of both legislative and executive appointments to the Federal Election Commission, the Court in *Buckley* stated the basis for such a sentiment was beyond dispute as a practical matter. *Buckley, supra,* 424 at 134, 96 S.Ct. 612. However, the Court held this reasoning insufficient to warrant a violation of the Appointments Clause. As analyzed above, the power of appointment in Kansas does not vest exclusively in the executive. Our further analysis of the alleged usurpation of executive power by the legislature under the guidelines set out by the Kansas Su-

preme Court discloses no significant encroachment by the legislature. We agree with defendants that this is an area of regulation requiring flexibility. The Kansas court has recognized that such flexibility exists with regard to claims based upon the doctrine of separation of powers. We concur with the statement in *Bennett, supra,* 219 Kan. at 288–89, 547 P.2d at 791 as follows:

"In our judgment a strict application of the separation of powers doctrine is inappropriate today in a complex state government where administrative agencies exercise many types of power including legislative, executive, and judicial powers often blended together in the same administrative agency. The courts today have come to recognize that the political philosophers who developed the theory of separation of powers did not have any concept of the complexities of government as it exists today. Under our system of government the absolute independence of the departments and the complete separation of powers is impracticable. We must maintain in our political system sufficient flexibility to experiment and to seek new methods of improving governmental efficiency. At the same time we must not lose sight of the ever-existing danger of unchecked power and the concentration of power in the hands of a single person or group which the separation of powers doctrine was designed to prevent."

▪ Parcell next maintains the definitions of "contribution" and "expenditure" are so vague and overlapping that the plaintiff cannot be compelled to file a disclosure report. A similar contention was advanced in *Buckley, supra,* 424 U.S. at 77–82, 96 S.Ct. 612, concerning the definitions in the FECA. The Court found the statute to be sufficiently specific for due process standards by construing the phrase "for the purpose of influencing the nomination or election of any individual to state office" as reaching only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate. *Id.* We apply the same con-

struction to the definitions of "contribution" and "expenditure" in the case at bar. The disclosure requirement of K.S.A. 25–4110 pertains to both contributions and expenditures in excess of $100. This provision is thus constitutionally sound.

Parcell further requests that we find the KCFA unconstitutionally vague because the definitions of "expenditure" and "contribution" are equivalent. K.S.A. 25–4102(d) and (f). Ostensibly both definitions cover the activity of Parcell in the preparation and distribution of the political flyers. Parcell points out that contributions are limited to $500 in the case of an associate district judge. K.S.A. 25–4112. Expenditures are not limited. Although Parcell is not charged with violating the contributions limitation, we shall address the contention because of the First Amendment issues involved. When the *Buckley* court interpreted the meaning of contribution, it recognized the "limiting connotation created by the general understanding of what constitutes a political contribution. Funds provided to a candidate or political party or campaign committee either directly or indirectly through an intermediary constitute a contribution. In addition, dollars given to another person or organization that are earmarked for political purposes are contributions under the Act." *Buckley, supra,* 424 U.S. at 24 n. 24, 96 S.Ct. at 637 n. 24. The definitions of "contribution" and "expenditure" in the KCFA closely track the federal law. By applying the construction used in *Buckley* to limit contributions, the definitions under attack are not constitutionally infirm. The rationale for distinguishing between contributions and expenditures is clear. The First Amendment protects an individual's independent expenditures for political expression. Such expenditures may not be limited. *Buckley, supra,* 424 U.S. 39–59, 96 S.Ct. 612. On the other hand, contributions fall without the scope of the First Amendment. A limitation upon contributions "entails only a marginal restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of sup-

port for the candidate and his views, but does not communicate the underlying basis for the support. The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate. A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor." *Buckley, supra,* at 20–21, 96 S.Ct. at 635–636. In light of the above, we find no merit in plaintiff's contentions of constitutionally fatal vagueness in the definitions of "contribution" and "expenditure."

■ Parcell next contends that the definition of "political committee" is void for vagueness. The definition reads:

"(i) 'Political committee' means any combination of two or more individuals or any person other than an individual, a major purpose of which is to support or oppose any candidate for state office, but not including any candidate committee or party committee."

In addition to the financial disclosure requirement under K.S.A. 25–4108, a political committee is subject to the statement of organization requirement of K.S.A. 25–4104. Although Parcell is not presently charged with violations of this provision, she maintains that it provides inadequate notice to a person of ordinary intelligence as to whether he does or does not belong to a political committee.

Since the political committee provisions are not at issue in the Commission's investi-

gation of Parcell, we are limited in our review to facial invalidity. The Commission is empowered to issue rules and regulations interpreting the statute. K.S.A. 25–4119a(c). Regulations further defining "political committees" have been issued. K.A.R. 19–21–3 (1978). The regulations list several factors to guide the determination of whether a political committee exists. A reading of the entire regulation discloses that this definition is not meant to apply to combinations of people that do not have the support or defeat of a candidate as a *major* purpose. This construction clearly excludes the combinations that Parcell maintains could be political committees under the Act, *e. g.* a husband and wife agreeing on a candidate, the seconding of a nominating speech, the agreement of any two people to speak at a political meeting, or the subscription to a newspaper advertisement endorsing a candidate. Parcell has failed to prove the definition of "political committee" is unconstitutionally vague.

■ Parcell also contends that the published article is primarily devoted to a discussion of political matters, not the express advocacy of a candidate. The test as constitutionally prescribed by *Buckley, supra,* 424 U.S. at 80, 96 S.Ct. 612 and codified in Kansas in K.A.R. 19–21–5 (1978) states in pertinent part: ". . . independent contributions and expenditures means contributions or expenditures made without the cooperation or consent of the candidate or committee intended to be benefited thereby and which expressly advocate the election or defeat of a clearly identified candidate." The parties stipulate that "[t]here is no existing information to indicate that the article was sent with the cooperation or consent of the candidate to be benefited thereby." An examination of the document in question reveals a four-page letter, including reprints from area newspapers and instructions for casting write-in ballots on a voting machine. Without doubt, the letter expressly advocates the election of Bill D. Robinson, Jr. as Associate District Judge and the defeat of Judge Francis Donnelly. Parcell's contention that the letter is issue-

oriented political expression protected from even financial disclosure requirements by the First Amendment is without merit.

■ Parcell next alleges that the administrative complaint is fatally defective. The Commission responds that the issue is not properly before the court because Parcell has not raised these defects with the Commission through an answer or otherwise. Parcell's administrative remedies have yet to be exhausted as required. *See*, 2 Am. Jur.2d *Administrative Law* § 595. Certainly no federal question is at issue here. Furthermore, we are not currently reviewing any final action of an agency in the state of Kansas. We shall not address the issue of the alleged defects in the administrative complaint.

Various additional claims are raised in the amended complaint based upon "the right of privacy, . . . the right not to be discriminated against and of equal protection of the laws, . . . the right to be free of Star Chamber probes and prosecutions. . . ." Claims of harassment, of violations of the Fifth Amendment immunity against self-incrimination, and of unlawful search and seizure are also alleged. Only the claims addressed in the above memorandum were argued and briefed by the parties. Plaintiff has failed to prove her case with respect to any of these claims stated in the complaint but not argued or briefed.

IT IS THEREFORE ORDERED that judgment be and hereby is entered for defendants. Counsel for defendants shall prepare, circulate, and forward for the court's approval and signature, a journal entry of judgment reflecting the holding of the foregoing memorandum and order.