No. 03–1082. COLORADO GENERAL ASSEMBLY v. SALAZAR, ATTORNEY GENERAL OF COLORADO, ET AL. Sup. Ct. Colo. Certiorari denied. 

CHIEF JUSTICE REHNQUIST, with whom JUSTICE SCALIA and JUSTICE THOMAS join, dissenting.

As a result of the 2000 census, Congress allotted an additional seat in the House of Representatives to Colorado. The Colorado General Assembly failed to pass a congressional redistricting plan in time for the 2002 elections. In response to a suit brought by Colorado voters, a Colorado State District Court drew a congressional district map for the 2002 elections that took account of the new census figures and conformed to federal voting rights requirements. *Avalos* v. *Davidson*, No. 01–CV–2897, 2002 WL 1895406 (Jan. 25, 2002), aff'd *sub nom. Beauprez* v. *Avalos*, 42 P. 3d 642 (Colo. 2002) (en banc).

At the end of the 2003 regular session, the newly elected General Assembly enacted a redistricting plan, which was signed into law on May 9, 2003. Shortly thereafter, the Colorado Attorney General, Ken Salazar, filed an original action in the Supreme Court of Colorado, seeking an injunction to prevent the Colorado Secretary of State, Donetta Davidson, from implementing the General Assembly's redistricting plan and requesting a writ of mandamus requiring Davidson to return to the 2002 redistricting plan. The General Assembly intervened on the respondents' side to join Davidson.

The Supreme Court of Colorado held, *inter alia,* that Article V, § 44, of the Colorado Constitution limits redistricting to once per decade, to be completed in the time between the decennial census and the first election of the decade. *People ex rel. Salazar* v. *Davidson,* 79 P. 3d 1221, 1231 (2003) (en banc). The court stated:

> "We recognize and emphasize that the General Assembly has primary responsibility for drawing congressional districts.

> But we also hold that when the General Assembly fails to provide a constitutional redistricting plan in the face of an upcoming election and courts are forced to step in, these judicially-created districts are just as binding and permanent as districts created by the General Assembly. We further hold that regardless of the method by which the districts are created, the state constitution prohibits redrawing the districts until after the next decennial census." *Ibid.*

The court ordered Davidson to employ the judicially created plan through the 2010 elections. While purporting to decide the issues presented exclusively on state-law grounds, the court made an express and necessary interpretation of the term "Legislature" in the Federal Elections Clause in concluding that "[n]othing in state or federal law contradicts this limitation." *Id.*, at 1232. The General Assembly and Davidson have asked this Court to review the Colorado Supreme Court's conclusion that Article V, § 44, of the Colorado Constitution (as construed by the Supreme Court of Colorado) does not violate Article I, § 4, cl. 1, of the Federal Constitution. While not disputing state courts' remedial authority to impose temporary redistricting plans "so long as the legislature does not fulfill its duty to redistrict," Pet. for Cert. 22, they argue that the *permanent* use of a court-ordered plan, despite the legislature's proposal of a valid alternative, violates the Federal Constitution.

Article I, § 4, cl. 1, of the United States Constitution provides:

> "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

By interpreting "general assembly" in Article V, § 44, of the Colorado Constitution to include the state courts, the Supreme Court of Colorado held that the Colorado Constitution makes the state courts part of the legislative process. The court relies on *Smiley* v. *Holm*, 285 U. S. 355 (1932), for the proposition that the States have the right to define "Legislature" under Article I, § 4.

In *Smiley*, the Supreme Court of Minnesota had interpreted Article I, § 4, as vesting the power to redistrict solely in the legislative body of Minnesota, without the need for gubernatorial

approval. We first noted that there was no question as to what "body" the term "legislature" describes:

> "As this Court said in *Hawke* v. *Smith, No. 1*, 253 U. S. 221, 227 [(1920)], the term was not one 'of uncertain meaning when incorporated into the Constitution. What it meant when adopted it still means for the purpose of interpretation. A Legislature was then the representative body which made the laws of the people.'" 285 U. S., at 365.

We next explained that the focus of our inquiry was not the "body" but the function to be performed. We concluded that the function referred to by Article I, §4, was the lawmaking process, which is defined by state law. 285 U. S., at 372. In Minnesota, the lawmaking process, as defined by the State, included the participation of the Governor. *Id.*, at 372–373.

And in *Ohio ex rel. Davis* v. *Hildebrant*, 241 U. S. 565 (1916), we examined referenda to approve or disapprove by popular vote any law enacted by the Ohio General Assembly. In each of these decisions, we concluded that the lawmaking mechanisms were consistent with Article I, §4. Conspicuously absent from the Colorado lawmaking regime, under the Supreme Court of Colorado's construction of the Colorado Constitution to include state-court orders as part of the lawmaking, is participation in the process by a body representing the people, or the people themselves in a referendum.

Generally the separation of powers among branches of a State's government raises no federal constitutional questions, subject to the requirement that the government be republican in character. But the words "shall be prescribed in each State by the *Legislature* thereof" operate as a limitation on the State. Cf. *McPherson* v. *Blacker*, 146 U. S. 1, 26 (1892) (discussing Article II, §1, cl. 2, of the U. S. Constitution). And to be consistent with Article I, §4, there must be some limit on the State's ability to define lawmaking by excluding the legislature itself in favor of the courts.

We should grant certiorari to review the Colorado state court's debatable interpretation of this provision of federal law. I dissent from the denial of the petition for writ of certiorari.