OSCN Found Document:Question Submitted by: The Honorable John Haste, Oklahoma State Senate, District 36

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable John Haste, Oklahoma State Senate, District 36
2024 OK AG 4
Decided: 02/28/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 4, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Are the changes to the appointment authority of the Turnpike Authority members, from six appointments by the Governor to two appointments by the Governor, two appointments by the President Pro Tempore of the Senate and two appointments by the Speaker of the House of Representatives, a violation of the Oklahoma Constitution?
2. Do the changes enacted in HB2263 qualify as the Legislature exercising unconstitutional coercive influence over the Turnpike Authority?
I.
SUMMARY
¶1 For three reasons, this office concludes that the provisions of title 69 section 1703 (Supp.2023), as amended by House Bill 2263, do not violate the separation of powers provision in the Oklahoma Constitution, article IV, section 1. First, Legislative acts are strongly presumed to be constitutional and will be upheld "unless it is clearly, palpably and plainly inconsistent with fundamental law." Taylor v. State and Educ. Emps. Group Ins. Program, 1995 OK 51, ¶ 6, 897 P.2d 275, 277 (quoting Childs v. State ex rel. Okla. State Univ., 1993 OK 18, ¶ 13, 838 P. 571, 576). Second, under the appointment powers in article VI, section 13 of the Oklahoma Constitution, the Legislature may provide for the appointment of executive officers by a person or entity other than the Governor. Third, House Bill 2263 is consistent with the four-pronged balancing factor test used to determine the constitutionality of legislative appointments to boards and commissions. In re the Appl. of the Okla. Dept. of Transp. ("Transportation I"), 2002 OK 74, 64 P.3d 546; In re the Appl. of the Okla. Dept. of Transp. ("Transportation II"), 2003 OK 105, 82 P.3d 1000.

II.
BACKGROUND
¶2 An Oklahoma statute expressly identifies the purpose of the Turnpike Authority ("Authority" or "OTA") as follows:
In order to facilitate vehicular traffic throughout the state and remove the present handicaps and hazards on the congested highways in the state, and to provide for the construction of modern express highways embodying reasonable safety devices . . . .
69 O.S.2021, § 1701.
¶3 With these purposes in mind, the Legislature charges the Authority to finance, build, and operate turnpikes at locations and on routes it determines are feasible and economically sound. 69 O.S.2021, §§ 1701, 1705; In re the Appl. of the Okla. Tpk. Auth. 1989 OK 21, ¶ 13, 770 P.2d 16, 21. The Legislature vests the Authority with broad and specific powers and duties to perform its work. Statutes outline the express powers of the Authority, which include the power to adopt rules and regulations, and exercise eminent domain. 69 O.S.2021, § 1705. Section 1709(A) of title 69 authorizes the Authority to issue turnpike revenue bonds to pay all or part of the cost of any turnpike project.[1] 69 O.S.2021, § 1709(A). Proceeds of the bonds are disbursed in a manner as the Authority may determine. Id. § 1709(B). Further, the Authority is empowered to collect and pledge revenues. 69 O.S.2021, § 1730.[2]

¶4 Concerning turnpike project locations, the Legislature has authorized thirty-five general turnpike projects and expressed its intent that when a turnpike is authorized, it may begin in the relative vicinity of the statutorily authorized location. 69 O.S.2021, §§ 1705, 1705.1. For example, one authorization reads:
A new turnpike and bridge or any parts thereof from a point in the vicinity of the city of Mustang southerly across the South Canadian River to the H.E. Bailey Turnpike in the vicinity of the city of Tuttle; and then easterly across the South Canadian River to a point in the vicinity of the city of Norman.
69 O.S.2021, § 1705(28).
¶5 And, with a mandate to liberally construe the Authority's discretion, the Oklahoma Supreme Court has consistently found broad authority for the Authority to determine routes and the feasibility and economic soundness of turnpike projects exclusively. In re the Appl. of the Okla. Tpk. Auth., 1989 OK 21, ¶ 13, 770 P.2d 16, 21.
¶6 When carrying out the legislatively delegated powers, the Authority must act "in all respects for the benefit of the people of the state" to increase commerce and prosperity and improve their health and living conditions. 69 O.S.2021, § 1714. Related to requiring the Authority's acts to be for the betterment of the state and public, the Legislature declares the Authority's operations to be an essential governmental function of the state. 69 O.S.Supp.2023, § 1703. The Oklahoma Supreme Court has unequivocally determined that "Oklahoma is committed to the rule that Turnpikes are public highways" supporting the Legislature's declaration. Henry v. Okla. Tpk. Auth., 1970 OK 232, ¶ 14, 478 P.2d 898, 901. Unsurprisingly, then, turnpike projects are the property of the State. Application of Okla. Tpk. Auth., 1950 OK 208, ¶ 19, 221 P.2d 795, 803.
¶7 As a body, the Authority is "politic and corporate, and an instrumentality of the State. 69 O.S.Supp.2023, § 1703(A). The Oklahoma Supreme Court previously concluded that the Authority is an agency of the State. Henry, 1970 OK 232, ¶ 22, 478 P.2d at 901--02; Application of Okla. Tpk. Auth., 1963 OK 234, ¶ 1, 386 P.2d 165, 168.[3]

¶8 The Authority's membership consists of the Governor and six other members. 69 O.S.Supp.2023, § 1703. Until November 1, 2023, the Governor had appointed the six members joining him on the Authority's governing board. However, the Legislature substantially amended the appointment structure in 2023. House Bill 2263, 2023 Leg., 59th Reg. Sess., 2023 Okla. Sess. Laws ch. 295, § 1. As of November 1, 2023, title 69, section 1703 now vests appointments to the Authority with the Governor, the Speaker of the House, and the President Pro Tempore of the Senate, each having two appointments to the six-member public body. House Bill 2263 passed out of the House of Representatives by a vote of 82--2 and the Senate by 41--2. The Governor vetoed House Bill 2263, asserting that it permits the Legislature to "exercise unconstitutionally coercive influence over the executive department" and therefore violates the separation of powers provision in article IV, section 1 of the Oklahoma Constitution.[4] Subsequently, the Legislature overrode the Governor's veto by 78--19 and 39--5 votes in the House and Senate, respectively.
¶9 You request a formal Attorney General opinion on whether these legislative amendments to the Authority's composition violate any provision of the Oklahoma Constitution or are an exercise of unconstitutional coercive influence over the Authority. Accordingly, this opinion analyzes applicable statutes and case law, ultimately concluding that the House Bill 2263 is constitutional.

III.
DISCUSSION
A. Appointments
¶10 The framers of the Oklahoma Constitution gave the Legislature the power to legislate policy and create checks and balances on the Governor, intentionally creating a weak state chief executive. Ritter v. State, 2022 OK 73, 520 P.3d 370. Under article V, section 36 of the Oklahoma Constitution, the authority of the Legislature extends to all rightful subjects of legislation, and specific grants of authority in the Constitution do not work as restrictions upon the legislative power. Thus, the Legislature, in a general sense, may legislate in all areas, except those which the Constitution prohibits. Further, article V, section 60 of the Oklahoma Constitution vests the Legislature with the authority to create checks and balances within the executive department. Legislative acts are strongly presumed to be constitutional and will be upheld "unless it is clearly, palpably and plainly inconsistent with fundamental law." Taylor, 1995 OK 51, ¶ 6, 897 P.2d at 277. Generally, courts will not declare a statute unconstitutional unless its invalidity appears beyond a reasonable doubt. Bailey v. State Bd. of Pub. Affs., 1944 OK 301, ¶ 18, 153 P.2d 235, 240. Indeed, the Oklahoma Supreme Court has held that "[i]t is our duty to hold [a legislative act] valid unless there is a prohibition in the Constitution which precludes its enactment by the Legislature." Wentz v. Thomas, 1932 OK 636, ¶ 35, 15 P.2d 65, 70.
¶11 In contrast, the Governor's authority is limited to that provided by the Constitution and that which may otherwise be granted explicitly by the Legislature. Keating v. Edmondson, 2001 OK 110, 37 P.3d 882; Treat v. Stitt, 2021 OK 3, 481 P.3d 240 (Kauger, J. concurring). Stated otherwise, the Governor is without authority to exercise a power not validly and expressly granted by law or within the Constitution. Article VI, section 13 of the Oklahoma Constitution provides:
The Governor shall commission all officers not otherwise commissioned by law. All commissions shall run in the name and by the authority of the "State of Oklahoma," be signed by the Governor, sealed with the Great Seal of the State of Oklahoma, and attested by the Secretary of State. When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law.
OKLA. CONST. art. VI, § 13 (emphasis added).
¶12 Standing alone, the language in section 13 acknowledges that the Legislature can establish appointments in a manner other than by the Governor. Indeed, courts have routinely concluded that the Legislature, and not solely the Governor, can provide for the appointment of state officers. Riley v. State, ex rel. McDaniel, 1914 OK 251, 141 P. 264; Burford v. Board of Comm'rs, 1917 OK 40, 162 P. 780; Welch v. Key, 1961 OK 201, 365 P.2d 154. However, section 13 does not exist in a vacuum; it must operate consistently with the separation of powers requirements in article IV, section 1, of the Oklahoma Constitution.
B. Separation of Powers
¶13 Oklahoma's separation of powers clause is set forth at article IV, section 1, as follows:
The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. 
OKLA. CONST. art. IV, § 1 (emphasis added).
¶14 The separation of powers provision generally requires each department of the government to maintain independence in the sense that the acts of each are never controlled by or subjected to the coercive influences of the other. Transportation I, 2002 OK 74, ¶ 8, 64 P.3d at 549.

1. House Bill 2263, amending title 69, section 1703 (Supp.2023), is constitutional and does not violate the separation of powers provision in article IV, section 1 of the Oklahoma Constitution. 

¶15 The Oklahoma Supreme Court decides separation of powers issues by considering four non-exclusive factors. First, consideration is given to whether the function of the board or commission is executive or legislative (do the duties relate to enforcing the law, aiding in policymaking, serve a legislative aspect, etc.). The second criteria looks to the degree of control being exerted by the Legislature (do legislators sit on the body or is there indirect control that serves to give power of approval to the legislative department.). The third factor examines the Legislature's objective, including whether the Legislature is attempting to encroach upon the executive
[5]. Finally, the fourth factor asks what practical result is of blending the powers between the executive and legislative branches on the board or commission. Transportation I, 2002 OK 74, 64 P.3d 546 (relying on Schneider v. Bennett, 547 P.2d 786 (Kan. 1976)). No factor is determinative, and other factors may prove relevant in separate cases. Id. 2002 OK 74, ¶ 13, 64 P.3d at 550--51.
¶16 The Oklahoma Supreme Court first applied this balancing test in Transportation I, concluding that the power wielded by the six legislative members of the Legislative Bond Oversight Commission ("LBOC") usurped the powers of the executive branch and, therefore, violated the constitutional separation of powers requirement in article IV, section 1 of the Oklahoma Constitution. Shortly thereafter, in Transportation II, the Court determined that the authority to make appointments of non-legislative members to the Council of Bond Oversight (the "Council") did not violate the constitutional separation of powers requirement.
[6] This opinion discusses Transportation I and Transportation II and applies the four-factor test to the Authority's composition structure.
a. The Authority exercises a blend of executive and legislative powers. 
¶17 The first factor in the analysis does not require crystal clear distinctions between branches of government; instead, a certain amount of "blending" is inevitable. State v. Claborn, 1994 OK CR 8, ¶ 8, 870 P.2d 169, 171. In Transportation I, the LBOC's function was described as approving grant anticipation notes after the Transportation Commission authorized the Oklahoma Department of Transportation to issue the notes. According to the Oklahoma Supreme Court, the dominant aspect of the LBOC's function was carrying out legislative policy, and the LBOC consisted of only legislators exercising executive powers. Transportation I, 2002 OK 74, ¶ 16, 64 P.3d at 551. In Transportation II, the Court evaluated the duties of the newly established Council, which were to approve proposed bond obligations and determine whether the obligations' purpose is a proper public function or purpose. Transportation II, 2003 OK 105, ¶ 13, 82 P.3d at 1004. The Court determined that "[t]he Council's exercise of power over state obligations may properly be viewed as a blend of executive and legislative power." Id.
¶18 Executive authority enforces or executes the law, and legislative power is policymaking. Tweedy v. Okla. Bar Ass'n, 1981 OK 12, 624 P.2d 1049; City of Sand Springs v. Dep't of Pub. Welfare, 1980 OK 36, 608 P.2d 1139. Title 69, section 1705 imposes on the Authority a number of powers, including exercising eminent domain, constructing and adjusting grade separations on turnpikes and other roadways, prequalify contractors to bid on public construction contracts awarded by the Authority. 69 O.S.2021, § 1705; OAC 731:10-1-2. This latter authority includes reviewing applications for compliance for paving, grading, drainage, bridge work, or other Authority construction work. OAC 731:10-1-2. The Authority is also authorized to issue turnpike revenue bonds to pay all or any part of the cost of one or more turnpike projects. 69 O.S.2021, § 1705(f). In issuing bonds and carrying out its enforcement powers to construct and maintain turnpike projects, the Authority exercises enforcement powers, the dominant aspect of which is executive.
¶19 Additionally, this office finds persuasive the Court's rationale in Transportation II that determining whether a project is a proper public purpose has a legislative aspect and is, therefore, the exercise of legislative power. The Legislature has given the Authority broad powers, including:
To construct, maintain, repair, and operate turnpike projects and highways, with their access and connecting roads, at such locations and on such routes as the [Authority] shall determine to be feasible and economically sound; provided, that until specifically authorized by the Legislature, the Authority shall be authorized to construct and operate toll turnpikes only at the following locations . . . .
69 O.S.2021, § 1705(e) (emphasis added).
¶20 The Oklahoma Supreme Court recently recognized that once the Legislature generally authorizes a turnpike project, the Authority possesses "very broad authority to determine routes, including access and connecting roads, within the listed authorized locations." In re the Appl. of the Okla. Tpk. Auth., 2023 OK 84, ¶ 17, 535 P.3d 1248, 1253. And it is settled that the Authority exclusively determines turnpike projects' feasibility and economic soundness. Id., 2023 OK 84, ¶ 19, 535 P.3d at 1253; In re the Appl. of the Okla. Tpk. Auth., 1989 OK 21, ¶ 13, 770 P.2d 16. The Oklahoma Supreme Court recently summarized the Authority's broad powers as follows: "We follow the last 30 years of this Court's precedent liberally construing the [Authority's] discretion in designating turnpike routes by 'not inquir[ing] into the matter for the purpose of demanding why some other route was not chosen." In re the Appl. of the Okla. Tpk. Auth., 2023 OK 84, ¶ 22, 535 P.2d at 1254. Accordingly, while the Authority exercises executive powers, consistent with the determination in Transportation II, this office concludes that it also exercises power with a legislative aspect.[7] Thus, this office finds that the Authority exercises a blend of executive and legislative power.
b. Appointments to the Authority by the Speaker of the House of Representatives and the President Pro Tempore of the Senate do not demonstrate unconstitutional control of the Authority by the legislative branch.
¶21 The second criterion requires analyzing the degree of control the Legislature exercises by authorizing multiple appointments to the Authority. In Transportation I, the Oklahoma Supreme Court determined there was a high degree of control and coercive legislative influence because the executive office did not have any appointments to the LBOC. Transportation I, 2002 OK 74, ¶ 17, 64 P.3d at 551. Instead, the entire composition of the governing board included current members of the Legislature, and the statute provided for appointments only by the legislative department. The Governor was prohibited from making a single appointment.
¶22 In Transportation II, however, the Court did not discern direct legislative control because the statute "does not permit sitting legislators to be appointed to serve on the Council as was the case in [Transportation I]." Transportation II, 2003 OK 105, ¶ 14, 82 P.3d at 1004. While the appointing authorities theoretically controlled their appointees, the Court deemed it sufficient that the executive branch maintained a majority of the appointments and could control the Council. Id., 2003 OK 105, ¶ 14, 82 P.3d at 1004.[8]

¶23 Here, the Authority's membership consists of seven non-legislative members. 69 O.S.Supp.2023, § 1703. For six members, the President Pro Tempore of the Senate, the Speaker of the House of Representatives, and the Governor each appoint two members. For the seventh seat, the Governor is an ex officio member. The term "ex officio" is defined to mean "by virtue or because of an office" and is "often misused as a synonym for "nonvoting." Ex officio, BLACK'S LAW DICTIONARY, (8th Ed. 2004). However, as previously determined by this office, absent a statutory restriction otherwise, ex officio members of public bodies may do "all things necessary and essential to carry out the purpose of the law creating" the public body, including voting at meetings of the public body. 2009 OK AG 26,¶ 2. If the Legislature intended to restrict the Governor's ability to vote, it would have done so, likely by indicating that he is a nonvoting ex officio member. See 70 O.S.2021, § 3-145.1, superseded by 70 O.S.Supp.2024, § 3-145.1 (eff. July 1, 2024) (State Superintendent and Secretary of Education serve as "ex officio nonvoting members") (emphasis added). Accordingly, the Governor is a voting member of the Authority.
¶24 While the executive is theoretically unable to control the Authority's decisions, this office finds that the Authority is distinctly different from the facts of the LBOC in Transportation I and finds Transportation II to be more analogous. First, no current legislator is appointed to the Authority. Second, as a voting member with two appointments, the Governor theoretically has more control than any other appointing authority. Spreading out the appointments and that the President Pro Tempore of the Senate utilized his appointing authority to re-appoint the Governor's appointee to the Authority further dissipates control, real and perceived. See Letter from Greg Treat, supra, at 8. For these reasons, this office does not discern the requisite degree of control to make the Authority's appointment structure unconstitutional.
¶25 After all, if the Legislature wants to control the Authority's operations, it already can. 69 O.S.2021, § 1732 (The Legislature may amend, repeal, or alter the authorization for construction, routes, or location of all or a portion of any project in which bonds have not yet been sold). Further, with the 2023 amendments to title 69, section1703, the Legislature kept intact language expressly authorizing current appointees to remain and serve the duration of the term for which they were originally appointed.[9] However, it did not do so. Accordingly, the evidence reveals an absence of the degree of control to hold the provisions of title 69, section 1703 constitutionally infirm.[10]
c. Evidence is lacking to conclude there exists an improper attempt to encroach or interfere with the executive branch.
¶26 The third factor in the analysis looks at legislative intent. In Transportation I, the Court considered whether the evidence showed legislative intent to cooperate, such as by requiring appointees to have particular expertise. Transportation I, 2002 OK 74, ¶ 18, 64 P.3d at 551. Because the statute did not address the qualifications of appointees, and because the LBOC membership was exclusively current legislators, the Court determined the Legislature achieved the effect of demonstrating supremacy. Id., 2002 OK 74, ¶¶ 18--19, 64 P.3d at 551.
¶27 Then, in Transportation II, the Court noted that the Council is statutorily charged with hiring a bond advisor to assist with its oversight obligations. Transportation II, 2003 OK 105, ¶ 15, 82 P.3d at 1005. The Court determined that this duty and that the Council is the governmental body the Legislature and the Governor turn to for information on the state's debt levels are evidence of the Legislature attempting to cooperate with the executive department. Id.
¶28 Here, the Authority is vested with the authority to construct, build, and maintain turnpike projects, which are public highways and state property. Application of Okla. Tpk. Auth., 1950 OK 208, ¶ 19, 221 P.2d at 803; Henry, 1970 OK 232, ¶ 14, 478 P.2d at 901. The Authority must work "in all respects for the benefit of the people of the state" to improve their health and living conditions and to increase commerce and prosperity. 69 O.S.2021, § 1714. To fulfill these vast responsibilities, section 1705(k) empowers the Authority to retain engineers, attorneys, accountants, construction and financial experts, superintendents, managers, and any other employees it deems necessary to perform its duties. The Authority also has an executive director, who acts as the Authority's chief administrative officer. OAC 731:1-1-3(b).[11] Together, these individuals assist the Authority in overseeing turnpike projects, from conception and design to project approval, funding, and maintenance after construction.
¶29 Accordingly, the Authority is a sound resource and arguably the body to which the Governor and Legislature would turn to stay abreast of Oklahoma's public turnpikes and their impact on health, living conditions, and the state's commerce and prosperity. This favors a conclusion that the Legislature is not improperly intending to encroach on the executive and control the Authority.
¶30 However, one or more individual legislators have notably made statements to various news media and outlets indicating their views that the intent of the 2023 amendments to title 69, section 1703. According to them, they intended to prevent exclusive control by the executive branch. Accordingly, there may be some degree of a motive to inject legislative control over the Authority's work. Inasmuch as those statements reflect the motive of the individual making them, the comments may not be stretched to reflect the Legislature's intent. In Oklahoma, the Legislature shows its intent only through its vote, not individual legislators. Haynes v. Caporal, 1977 OK 166, ¶ 10, 571 P.2d 430, 434 ("Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote."). Accordingly, considering the foregoing, this office is unable to discern an improper legislative motive to infringe upon or interfere with the executive department through the Authority.
d. The available evidence demonstrates the practical effect of blending the powers does not result in improper encroachment with the executive branch.

¶31 Transportation I and II both reflect that a separation of powers analysis should examine the practical effect of blending the powers, as shown by actual experience over time. Although the Court was unable to address this fourth factor due to not having any record of the experience of blending appointment powers, there is at least some evidence here. In the month following the amendments to the Authority's appointment structure taking effect, the President Pro Tempore used his appointment power to re-appoint the Governor's appointee. See Letter from Greg Treat, Oklahoma Senate President Pro Tempore, to John Titsworth (Dec. 21, 2023) (on file with author). This act demonstrates the practical effect of the legislative and executive branches working in cooperation with another, accomplishing the Authority's work for the State of Oklahoma, and ensuring both branches have a sound source of information concerning Oklahoma's roadways.
¶32 Again, legislative acts are strongly presumed to be constitutional and are upheld "unless it is clearly, palpably and plainly inconsistent with fundamental law. Taylor, 1995 OK 51, ¶ 6, 897 P.2d at 277. Applying Transportation I and II, this office determines the Authority's appointment structure, as provided in title 69, section 1703, does not subject the executive department to the coercive influence of the legislative department, and therefore does not violate the separation of powers provision in article IV, section 1 of the Oklahoma Constitution. 

¶33 It is, therefore, the official Opinion of the Attorney General that:

The provisions of title 69 section 1703 (Supp.2023), as amended by House Bill 2263, are constitutional and do not violate the separation of powers provision in the Oklahoma Constitution, article IV, section 1.
 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
BRAD S. CLARK
DEPUTY GENERAL COUNSEL

FOOTNOTES
[1] The authority to issue bonds has two layers of oversight. First, a bond issue must be approved by the Council of Bond Oversight, though the Council cannot review the merits of a proposal. 62 O.S.2021, § 695.8. Second, the Authority may apply to the Oklahoma Supreme Court for bond approval. 69 O.S.2021, § 1718. Since 1950, when construction for turnpike projects began, the Oklahoma Supreme Court has "never disallowed a bond issuance of the [Authority]. In re the Appl. of the Okla. Tpk. Auth., 2023 OK 84, ¶ 6, 535 P.3d 1248, 1250.
[2] While acknowledging the Authority's broad powers and "many detailed provisions [in statute] as to how the Authority may proceed," the Oklahoma Supreme Court determined that the statutes delegate all power necessary to accomplish the purpose of the Authority's statutory purposes, but not more than that. Application of Okla. Tpk. Auth., 1950 OK 208, ¶¶ 38--39, 221 P.2d 795, 806. Accordingly, the Court held that the Authority's powers and duties do not amount to an unconstitutional delegation of power. Id. ¶ 39, 221 P.2d at 806.
[3] While not necessary to the analysis here, it is noted that this office and the Oklahoma Supreme Court have also categorized the Authority and similarly established entities in other ways. See 1977 OK AG 110(the Authority is "not the 'State' nor one of the 'departments thereof.'"); In re Appl. of the Okla. Capitol Improvement Auth, 2022 OK 31, ¶ 2 n.2, 507 P.3d 1256, 1257 n.2 ("The Oklahoma Capitol Improvement Authority is a quasi-governmental entity created by statute. Title 73 O.S.2021, ch.6, § 152 defines the OCIA as a 'body corporate and politic' and an 'instrumentality of the state."); Hirschfeld v. Okla. Tpk. Auth., 2023 OK 59, ¶ 7, 541 P.3d 811, 817 (referencing the Authority as a public trust).
[4] Chris Casteel, Stitt vetoes bill that would reduce his influence on Oklahoma Turnpike Authority, Oklahoman (May 22, 2023 3:45 PM), https://www.oklahoman.com/story/news/politics/government/2023/05/22/oklahoma-turnpike-authority-legislature-appointment-bill-governor-kevin-stitt-vetoes/70243903007/ The Governor did not take issue with similar amendments to the provisions for appointments to the State Transportation Commission in 2019. Historically, appointments to the eight-member Transportation Commission were vested with the Governor. However, in 2019, through Senate Bill 457, appointments to the Commission were blended, with the Governor having four, the Speaker of the House having two, and the President Pro Tempore of the Senate having two. Senate Bill 457 was sent to the Governor on March 13, 2019, and he signed it that day; see also, House Bill 2263 Veto https://www.sos.ok.gov/documents/legislation/59th/2023/1R/HB/2263.pdf
[5] The Legislature expresses its intent through concerted action, as shown by its vote, not through expressions of an individual legislator. Davis v. Childers, 1937 OK 728, 74 P.2d 930.
[6] In light of Transportation I, the Legislature established the Council, and the duties and powers of the LBOC devolved upon the newly created Council.
[7] The Authority also has complete autonomy in disbursing proceeds of bond obligations and the right to issue bond obligations, as well as broad authority to pledge revenues, including motor fuel taxes collected by the State and apportioned to the Authority for fuel consumed on turnpike roadways. 69 O.S.2021, §§ 1709, 1730.
[8] See State ex rel. Bd. of Ethics v. Green, 566 So.2d 623, 626 (La. 1990) ("Of course, the fact of original appointment may suggest the existence of some influence by the Legislature over the appointees, but even this possibility of control is dissipated by the spreading of the appointive powers among the Governor, the Senate and the House of Representatives.")
[9] Compare Senate Bill 435, 53rd Leg., 2011 First Reg. Sess., 2011 Okla. Sess. Laws ch. 316, § 1:
On the effective date of this act, all appointed positions of the current State Board of Education shall be deemed vacant and the terms of persons serving on the Board shall be deemed terminated. The Governor shall make initial appointments pursuant to the provisions of this subsection within thirty (30) days of the effective date of this act, with one member appointed from each congressional district and one member appointed from the state at large. (Emphasis added.)
[10] The language in section 1703 concerning appointees remaining for the duration of their original eight-year term is also indicative of an absence of improper legislative encroachment.
[11] 75 O.S.2021, § 308.2(C) ("Rules shall be valid and binding on persons they affect, and shall have the force of law . . . .").

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1977 OK AG 110, 
Question Submitted by: Paul A. Wilbor, Vice-Chairman, State Board of Public Affairs
Cited

 
2009 OK AG 26, 
Question Submitted by: The Honorable Joe Dorman, State Representative, District 65
Cited

Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1994 OK CR 8, 870 P.2d 169, 
STATE v. CLABORN
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 21, 770 P.2d 16, 60 OBJ 312, 
Oklahoma Turnpike Authority, Application of
Discussed at Length

 
1914 OK 251, 141 P. 264, 43 Okla. 65, 
RILEY v. STATE ex rel. McDANIEL.
Discussed

 
1993 OK 18, 848 P.2d 571, 64 OBJ 745, 
Childs v. State ex rel. Oklahoma State University
Cited

 
1937 OK 728, 74 P.2d 930, 181 Okla. 468, 
DAVIS v. CHILDERS
Discussed

 
1917 OK 40, 162 P. 780, 63 Okla. 42, 
BURFORD v. BOARD OF COM'RS OF LINCOLN COUNTY
Discussed

 
2001 OK 110, 37 P.3d 882, 72 OBJ 3672, 
KEATING v. EDMONDSON
Discussed

 
1961 OK 201, 365 P.2d 154, 
WELCH v. KEY
Discussed

 
1932 OK 636, 15 P.2d 65, 159 Okla. 124, 
WENTZ v. THOMAS.
Discussed

 
1963 OK 234, 386 P.2d 165, 
APPLICATION OF OKLAHOMA TURNPIKE AUTHORITY
Discussed

 
1995 OK 51, 897 P.2d 275, 66 OBJ 1835, 
Taylor v. State and Educ. Employees Group Ins. Program
Discussed at Length

 
2002 OK 74, 64 P.3d 546, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA DEPT. OF TRANSPORTATION
Discussed at Length

 
1970 OK 232, 478 P.2d 898, 
HENRY v. OKLAHOMA TURNPIKE AUTHORITY
Discussed at Length

 
2003 OK 105, 82 P.3d 1000, 
IN THE MATTER OF THE APPLIC. OF THE OKLA. DEPT. OF TRANSPORTATION
Discussed at Length

 
1980 OK 36, 608 P.2d 1139, 
City of Sand Springs v. Department of Public Welfare
Discussed

 
1977 OK 166, 571 P.2d 430, 
HAYNES v. CAPORAL
Discussed

 
2021 OK 3, 481 P.3d 240, 
TREAT v. STITT
Discussed

 
2022 OK 31, 507 P.3d 1256, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY
Discussed

 
2022 OK 73, 520 P.3d 370, 
RITTER v. STATE
Discussed

 
2023 OK 59, 
HIRSCHFELD v. OKLAHOMA TURNPIKE AUTHORITY
Cited

 
2023 OK 84, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA TURNPIKE AUTHORITY
Discussed at Length

 
1981 OK 12, 624 P.2d 1049, 
Tweedy v. Oklahoma Bar Ass'n
Discussed

 
1950 OK 208, 221 P.2d 795, 203 Okla. 335, 
In re OKLAHOMA TURNPIKE AUTH.
Discussed at Length

 
1944 OK 301, 153 P.2d 235, 194 Okla. 495, 
BAILEY v. STATE BD. OF PUB. AFFAIRS
Discussed

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 695.8, 
Duties of Council of Bond Oversight
Cited

Title 69. Roads, Bridges, and Ferries

 
Cite
Name
Level

 
69 O.S. 1701, 
Purpose - Authority to Construct, Maintain, Repair and Operate Projects
Discussed

 
69 O.S. 1705, 
Authority - Powers and Duties
Discussed at Length

 
69 O.S. 1703, 
Oklahoma Turnpike Authority - Corporate Body - Instrumentality of State - Liabilities - Members - Officers - Surety Bonds - Compensation
Discussed at Length

 
69 O.S. 1709, 
Turnpike Revenue Bonds
Discussed

 
69 O.S. 1714, 
Exemptions from Taxation - Leased Property Subject to Taxation
Discussed

 
69 O.S. 1718, 
Judicial Determination of Validity of Bonds
Cited

 
69 O.S. 1730, 
Trust Fund - Motor Fuel Tax Revenues Subject to Expenditure and Pledge
Cited

 
69 O.S. 1732, 
Legislative Power to Alter or Amend Construction or Location
Cited

Title 73. State Capital and Capitol Building

 
Cite
Name
Level

 
73 O.S. 152, 
Authority Created - Membership - Officers - Quorum - Bond
Cited

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 308.2, 
Effect of Promulgated Rule
Cited